CLAYTON, SHERIFF, ETC., VS. LAFARGUE.

The authority of a court of equity cannot be exerted to restrain, by injunction, the collection of the taxes assessed upon land as subject to overflow, under the act of 16th February, 1859, on the allegation that the land was erroneously assessed because it is not such as would be benefited by the levee work provided for by the act.

Whether the land, upon which a levee tax may be assessed, would be benefited by the levee is a matter of fact to be determined by the county court, whose decision is declared to be final; and if it err in judgment, the remedy of the owner, if he has any, is strictly at law by certiorari, and not in equity.

General allegations in a bill to enjoin the sale of land for levee taxes, putting in issue the correctness of the judgment of the inspector, and disputing the truth of his return, without stating a single fact to impeach the soundness of his judgment, or the integrity of his assessment, are not sufficient to entitle the complainant to the interference of a court of chancery by injunction.

[I would not sanction an interpretation of the levee act that would make the judgment and return of the inspector final and conclusive in all cases; but reserve for future cases the expression of my views upon the question of the jurisdiction of chancery to enjoin the sale of lands upon illegal assessments,  *Per English, C. J.*]


*Appeal from Desha Circuit Court in Chancery.*


Hon. JOHN C. MURRAY, Circuit Judge.


WEATHERFORD, for the appellant.

It is submitted confidently that the complainant below cannot be heard in this tribunal.

In *Randle vs. Williams*, 13 *Ark.* 380, it is held that a chancery proceeding to correct an excessive assessment would be wholly unwarranted and unauthorized, and that if the assessment and levy were excessive, the appropriate remedy was by appeal to the county court. And it does not appear, nor is it pretended that the appellee was deprived of the right of appeal without fault or negligence on his part. The cases as to assessment are precisely similar; see *Roberts vs. Williams*, 15 *Ark.* 48; *Osborn vs. Inhabitants of Danvers*, 6 *Pick.* 98; *Gedney vs. Inhabitants of Tewksbury*, 3 *Mass.* 309; 6 *Mass.* 44; 11 *Ib.* 365.

We can see no ground why the same should not be true as to the *land* assessed—the jurisdiction over both the land and amount of assessment is unquestioned. The land, as shown by the bill, was part of the swamp land—had been reported by the selecting agent—assessed by the inspector—passed upon by the county courty—and, indeed, every step taken to confirm the presumption that it was both subject to taxation and correctly assessed: If erroneous, the only remedy to exempt the land as well as to reduce the assessment, was by application to the county court. *See authorities above.*

Bell & Carlton, for appellee. .

The point we make is this: By the 2d section of the levee law it is expressly provided " that no lands shall be embraced in said reports that are not subject to reclamation by a general system of levees in said district." It is expressly alleged in the bill, that the lands described in the bill are not subject to reclamation by a general system of levees in said district. The demurrer admits the truth of the allegation.

Mr. Justice Compton delivered the opinion of the Court.

This was a bill in chancery, exhibited by Agnes Lafargue, to restrain the sheriff of Desha county from proceeding to advertise and sell a half section of land for taxes, imposed under the act of the legislature, approved 16th February, 1859, entitled " an act to provide for making and repairing levees in Desha and Phillips counties. *Pamph. Acts* 1858, *p.* 153.

By the provisions of the act, the county court is authorized to levy a tax on all lands subject to overflow, situate in Desha and Phillips counties, that would be benefited by levee work. The funds thus raised are to be expended in the construction of such levees as in the judgment of the levee inspectors would be necessary to protect the lands. The inspectors are to act under oath, and be the " sole judge of what land will be benefited by levee work," and shall embrace in the assessment such lands only as they may deem of that description or character. And it is made the duty of the county court to adjust the assessment and levy of the tax, by hearing and deciding all questions relating to the improper assessment and taxation of any lands, or the omission to assess and tax any, legally taxable under the provisions of the act, and make addition to, or deduction from the taxes charged; which correction and deduction may be made upon the affidavit of the person applying therefor, stating the grounds upon which it is claimed, or any other evidence satisfactory to the county court, " whose decision shall be final." The bill, besides urging several constitutional objections to the act, charges that the complainant's land was not

such as would be benefited by the construction of the contemplated levees. A demurrer to the bill was overruled, and the defendant appealed.

Such of the objections as relate to the constitutionality of the act are the same as those raised in *McGeehee vs. Mathis*, 21 *Ark.* 40, and decided by this court, in that case, not to have been well taken. It is insisted, however, that conceding the law to be constitutional, the complainant's land was erroneously assessed; because it was not such as would be benefited by the levees provided for by the act—while for the defendant it is contended that, admitting the error complained of, the authority of a court of equity cannot be exerted to restrain, by injunction, the collection of the taxes assessed.

Chancery jurisdiction in cases like this seems never to have been exercised in England; and though there is some contrariety of judicial opinion in the American courts, the best considered cases explicitly and emphatically deny such jurisdiction. Thus, in *Levy vs. Corporation of New York*, 4 *Johns. Ch.* 354, the bill was filed for relief against an assessment made to defray the expenses of a common sewer in the city of New York, and for an injunction to restrain the defendants from collecting the taxes. The assessment was made pursuant to an act of the legislature, which provided that it should be lawful for the corporation to cause, among other improvements, common sewers to be made in any part of the city, and to cause estimates of the expense to be made, and a just and equitable assessment thereof, among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion, as near as might be, to the advantage which each should be deemed to acquire, and to appoint skilful and competent persons—who were to act under oath—to make out and certify to the common council, for ratification, such estimate and assessment, which, if ratified, should be binding and conclusive upon the owners and occupants of the lots assessed. It was contended that the assessment did not embrace a sufficiently extensive district of the city, to include all the owners and occupiers of

lots who were intended to be, and were benefited by the sewer, and ought to have been made to bear a ratable proportion of the expense; and it was held that the court had no power to interfere with or set aside the assessment, on the ground merely of a mistake in judgment of the commissioners of estimate and assessment, as above indicated—there being no allegation of bad faith or partiality, in the commissioners in making the assessment; and that the assessment being final and conclusive, when ratified by the common council, the only remedy, if any, for the party aggrieved, was in a court of law by *certiorari*. Chancellor Kent said: " I cannot find that the court interferes in cases of this kind, where the act complained of was done fairly and impartially, according to the best judgment and discretion of the assessors; and a precedent once set, would become very embarrassing and extensive in its consequences. If the power under this statute had been exercised in bad faith and against conscience, I might have attempted to control it; but a mere mistake of judgment in a case depending so much upon sound discretion, cannot properly be brought into review, under the ordinary powers of this court. There must have been a thousand occasions and opportunities for the exercise of such a jurisdiction in the history of the jurisprudence and practice of the English Court of Chancery, if such a jurisdiction existed, and yet we find no precedents to direct us. A mistake of judgment in the assessors upon a matter of fact, what portion or district of the city was intended to be, and actually was benefited by the common sewer, can hardly be brought within the reach of that head of equity jurisdiction which relates to breaches of trust. Here is not, strictly speaking, a violation of duty. No bad faith or partiality in the assessors is pretended. The aid of this court might as well be asked to review every assessment of a land tax or a poor rate. I apprehend it would require a special provision by statute to authorize chancery to interfere with these assessments. Instances are numerous in the English law, in which jurisdiction is given to the chancellor, under local or private acts; and the cases imply that a stat-

ute was requisite to give the jurisdiction." Te same question was again raised in *Movers vs. Smedley*, 6 *John Ch.* 28; and a like conclusion was reached; the same high authority holding that the review and correction of all errors, mistakes and abuses in the exercise of the powers of subordinate public jurisdictions, and in the official acts of public officers, belonged exclusively to the common law courts. In *Livingston vs. Halenbeck*, 4 *Barb.* (*S. C.*) 9, which was a bill to restrain the sheriff from selling certain lands of the complainant, under warrants issued for the collection of taxes imposed under an act of the legislature, entitled " an act to equalize taxation," it was decided that a court of equity had no power to restrain, by injunction, the collection of taxes irregularly or erroneously assessed. The same principle was decided in *Van Doven vs. Mayor `etc.,* of New York*, 9 *Paige*, 388, *and* in the *Mayo' etc., of Brooklyn vs. Mesevale*, 26 *Wend.* 130. Where, however, matter of equitable cognizance is connected with the execution of the proceedings in the subordinate tribunal, or the official acts of public officers, the court will exercise jurisdiction; as where their execution would lead to the commission of irreparable injury or to a multiplicity of suits; because these are well defined heads of equity jurisdiction, which would necessarily involve an examination, incidentally, into the legality of the proceedings, and would be exceptions to the general doctrine. No such ground of jurisdiction is pretended in this case.

And here it may be proper to refer to the cases that have fallen under our observation, in which bills to restrain the collection of taxes have been maintained. *Anderson vs. The State*, 23 *Miss.* 549, was a contest between the tax collector and the assignees of the Commercial and Railroad Bank of Vicksburg The object of the bill was to enjoin the collector from selling certain securities of the bank for taxes, which the bank had transferred to the assignees after the assessment of its capitol stock. The validity of the assessment was not before the court, and the question was whether the state had, under the statutes of Mississippi, a lien for the taxes, which should prevail over the

title of the assignees.  Here was matter of equitable cogni-
zance, and brings this case within the exception above indica-
ted.  So, the jurisdiction of the court in *Osborn vs. U. S. Bank*,
9 *Whea.* 736, was not placed upon the ground of merely pre-
venting the sale of property for taxes illegally assessed; but
stands upon distinct grounds of equitable interposition, grow-
ing out of the peculiar circumstances of that case.  In *Vanover
vs. Justices of Inf. Court*, 27 *Geo.* 354, the bill was clearly
maintainable to prevent a multiplicity of suits; and in the cases
of *Brown vs. Marsh*, 1 *Foster* 81; *Levey vs. Smith*, 4 *Flor.* 154,
and *Williams vs. Cammack*, 27 *Miss.*, 209, the question of
jurisdiction was not raised.  But in *Barnett vs. Corporation of
Cincinnali*, 3 *Ohio*, 73, it was decided that equity would inter-
fere by injunction to stay the sale of city lots for taxes illegally
assessed.  And Mr. Chief Justice Collier in *Dyer vs. Br. Bank
at Mobile*, 14 *Ala.* 625, expresses an opinion to the same effect.

Whether the land in the case before us was such as would be
benefited by the contemplated levees, was matter of fact to be
determined by the county court, whose decision was declared
to be final; and if it erred in judgment, the remedy of the com-
plainant, if she had any, was strictly at law, by *certiorari*, and
not in equity.  The courts of common law afford ample reme-
dy to the party aggrieved by an irregular or erroneous assess-
ment.  The jurisdiction contended for would not only burden
the Court of Chancery with an immense mass of litigation for-
eign to its ancient jurisdiction, but would sanction the review
in that court, of every assessment made for raising the public
revenue, which in view of the preventive process of the court
and the great delay which, all know, attends its proceedings,
might, in some instances, lead to results seriously affecting the
public interest.

The decree must be reversed and the cause remanded to the
court below with directions to sustain the demurrer.

Mr. Chief Justice English:

I concur in the conclusion that the court below erred in over-

ruling the demurrer to the bill, and that the decree should be reversed, but deem it proper to state the grounds on which I place my concurrence in the reversal.

The act of 16th February, 1859, providing for the construction and repair of levees in the counties of Desha and Phillips, makes it the duty of the County Court of each of the counties named, to divide the overflowed lands therein into not less than four nor more than seven districts, (sec. 1.)

For each district the court is to appoint three resident freeholders, who are required to make out and report to the clerk of the County Court, and to be filed and kept in his office, a list of all lands in the district, *subject to overflow,* but no lands are to be embraced in the report which are not subject to *reclamation by a general system of levees in the districts,* (sec. 2.) These officers are called *selecting agents,* (sec. 8.)

The court is also to appoint for each district one *levee inspector* whose duty it is to *lay off such levees* as will *in his judgment* be needed for the *protection, from overflow,* of his district, to be built at a suitable distance from the river (sec. 7) and to cause to be constructed, and kept in repair, such levees, etc., (sec. 9–12.)

For the purpose of raising means to construct and repair the levees, etc., an annual tax is to be levied and collected upon the lands, in such district, that will be *benefited from overflow by levees,* (sec. 13,) and the County Court is to fix the rate of tax, etc.

It is made the duty of the *levee inspector* for each district to assess the lands therein, which are subject to taxation for levee purposes; and to make out a correct list of his assessment, certified under oath, and return it to the clerk of the County Court; and the act declares that the "*levee inspector shall be the sole judge of what lands will be benefited by levee work, and he shall embrace in his assessment all such lands as he may deem of that description or character.*" (sec. 13.)

The tax so assessed is to be collected by the sheriff, and the lands are subject to sale therefor.

The bill alleges that the complainant is the owner of a half section of land, situated in Desha county, and embraced in the

levee district numbered six; that the county court had fixed the rate of tax at two per cent. upon the value of the land, etc., and that the levee inspector had assessed complainant's land at $20 per acre.

" Complainant charges that her land will not be benefited or reclaimed by a general system of levees in Desha county, and especially by a system of levees in the very district in which her land is located, but if reclaimed or benefited at all by the building of levees, the drains must be built in the county of Arkansas, and not in the county of Desha."

Again she charges that her land will not be reclaimed by a general system of levees in the levee district in which it is located; and that the report of the *selecting agent*, appointed by the county court, under the second section of the act, was *improper* and *wrong*, and in violation of the clear meaning and intention of the section.

That the sheriff was proceeding to sell her land for the tax charged upon it, and she prays for an injunction, etc.

The allegations of the bill are entirely too general to entitle the complainant to the interference of a court of chancery by injunction.

The levee inspector, acting under bond, and a solemn oath to discharge his duties faithfully, residing in the district, acquainted, it must be supposed, with its topography, the sources and extent of the overflows, and capable of forming a correct judgment as to the location and magnitude of the levees necessary to protect the lands of his district from inundation, assessed and returned the complainant's tract as land that would be benefited by the levees provided for by the statute.

The complainant, by general allegations, puts in issue the correctness of the judgment of the inspector, and disputes the truth of his return, without stating a single fact upon which she based her impeachment of the soundness of his judgment, or the integrity of his assessment.

The inspector, acting in discharge of official duty, and supposed to be impartial, has said upon oath that the complain-

ant's land will be benefited by the levees contemplated by the statute; and the complainant, who is personally interested, has alleged, in general terms, that her land will not be benefited or protected by the levees, etc.; and upon the issue, thus made, she asks for an injunction.

Surely, if she is in the right, and the inspector in the wrong, she could have stated some facts to persuade the chancellor of the truth of her averment, and the error of the return of the inspector.

How did the complainant ascertain that her land would not be benefited or protected from overflow by the levees? Had the levees been laid off by the inspector, and left her land exposed to the river; or had the levees been constructed, and proven, by actual experience, ineffectual to protect her land? The allegations of the bill do not answer.

The 13th section of the act declares, that the levee inspector shall be the *sole judge* of what lands will be benefited by levee work, etc.

I would not sustain an interpretation of the act that would make his judgment and return final and conclusive in all cases, so as to shut out all application for relief to the courts, (*McGehee vs. Mathis*, 21 *Ark.* 51), but in view of his superior advantages to form a correct judgment, and of the confidence and discretion reposed in him by the act, I think a court of chancery should not interfere by injunction to enquire into the legality of an assessment made by him, and to restrain a sale of the land, except upon allegations of facts showing a clear and palpable mistake, or such gross abuse of his judgment and discretion as to amount to fraud in the assessment.

Believing the allegations of the bill in this case to be insufficient to warrant the interposition of a court of equity, I do not deem it necessary to go further into the question of the jurisdiction of chancery to enjoin the sale of lands upon illegal assessments, but reserve the expression of my views on the subject for future cases.

Mr. Justice FAIRCHILD.

I agree with both of my brother judges. While I fully assent to the reasoning of the Chief Justice, and agree with him that the demurrer to the bill ought to have been sustained, if for no other reason than the generality and insufficiency of the allegations of the bill, I also concur with Judge COMPTON in holding that the facts of this case do not bring it within the jurisdiction of a court of equity, and I approve of the argument and legal deductions of his opinion.