## G. W. Brooks v. H. F. Shelton, Sheriff, etc.

1. Relief in equity against erroneous tax assessments — diligence.— Courts in equity hold parties seeking relief against assessments alleged to be excessive or erroneous, to show that they have exercised strict diligence in availing themselves of every opportunity elsewhere afforded by statute for a correction of the alleged errors.

2. Chancery.—jurisdiction.—tax assessments.—A court of equity has no jurisdiction to revise or correct erroneous assessments. The proper forum for such revision and correction is the board of supervisors; and, for this purpose, application must be made in the manner and within the time prescribed by statute.

3. Same—practice.—On dissolution of an injunction restraining taxes, it is error to enter a decree on the injunction bond and against the sureties for the whole amount of taxes enjoined, and ten per cent damages thereon and costs. The decree should be for only the ten per cent and all costs and the taxes should be remitted to the tax collector for collection. Rev. Code of 1871, § 1751.

Appeal from the chancery court of Rankin county. Cabaniss, Chancellor.

A full statement of the case is contained in the opinion of the court.

*Frank Johnston*, for appellee.

It does not appear that the appellant was denied relief by the board of supervisors. If the merits of his application were to be considered by the board, and his assessment corrected, it was not for him to complain that the board had exceeded its powers.

But, admitting that the board had failed to act upon appellant's application, the question is presented, whether the chancery court has power to correct and revise the assessment.

This does not involve the question as to the power of a court of equity to pronounce upon the validity or illegality of a tax. This power belongs to both courts of law and equity, in cases where the question is properly presented.

The case at bar proceeds, not upon the theory that the tax is illegal, but that the assessment is erroneous.

The question then is as to the power of the court to inquire into the value of the property and revise and correct the assessment roll.

On this point, I submit that the jurisdiction given to the board of supervisors was special and limited, and the failure on the part of the board does not vest its powers and jurisdiction in a court of chancery. Wiggins v. Mayor of New York, 9 Paige, 16; Blackwell on Tax Titles, 117; Albany & West Stockbridge R. R. Co. v. the Town of Canaan, 16 Barb. 244; 6 Johns. Ch. 27.

If the failure of the board of supervisors to act had the effect of rendering the tax illegal, the jurisdiction cannot be maintained solely on this ground.

It is well settled that to give a chancery court jurisdiction, in addition to the illegality of the tax, there must be shown special circumstances bringing the case under some recognized head of equity jurisdiction. Coulson v. Harris, 43 Miss. 729; Dows v. City of Chicago, 11 Wall. 108; 2 Mich. 560; 25 N. Y. 312; 33 Barb. 322.

It is urged, however, by the appellant that the chancellor had no power to render a decree for both the tax and damages.

I submit that a fair construction of the statute sustains the decree. It is true that the word damages only is used, but the whole context of the act shows that a decree for the tax and damages was contemplated. The power to award a writ of execution is incident to the power to render the decree for tax and damages.

TARBELL, J.:

In 1871, George W. Brooks, of Rankin county, filed his bill of complaint against the tax collector of that county, with a prayer for injunction, upon the following averments, viz.: "That the assessor of taxes of said county for the fiscal year 1870 did assess the real and personal property of complainant above its proper valuation, in this, to wit: that the lands of complainant, 2591 acres, more or less, were assessed at the sum of $7 per acre, making the sum of $18,137; a lot at Pelahatchie depot, at $1,000; and a lot in Brandon at $1,000; 25 cattle at $15 per head—$375; 6 horses at $150 each —$900; 6 mules at $150—$900; 20 swine at $4 per head—$80; 20 head sheep at $2—$40; and 2 vehicles at $125, making the aggregate amount of real property so assessed, $20,137, and the personalty $2,420, which makes the total of such assessment $22,557. Complainant states and charges that the state tax upon said assessment is $113.78, and upon which was levied by the board of supervisors of said county, for the various special and county purposes, two hundred and ninety-five per cent, making such county and special tax the additional sum of $335.67, and a total tax on said property for state and county purposes the sum of $449.45.

"Complainant would state and show that the proper valuation of said property at the said time of assessment as aforesaid was as follows, to wit: said lands, 2591 acres at $3 per acre—$7,773; house and lot at Brandon, $500, and at Pelahatchie $500, making $8,773 of real estate, and 25 head of cattle at $10—$250; 6 horses at $120— $720; 6 mules at $120—$720; 20 sheep at $1.50—$30; 20 swine at $3–$60, and 2 vehicles at $100, making $1,880 of personal estate, and the total amount $10,653; and so he states and charges that said assessment was excessive, erroneous and unjust and oppressive to the amount of $11,904, the difference between the amount assessed and the true and proper valuation of the said

property; and he states and charges that the amount of state tax on the same is $53.26, and the other taxes for county and special and school purposes, as levied as aforesaid, being 295 per cent on the same, is $157.11, making his total tax $210.37 on said personal property, and $2 his poll tax.

"Complainant would further state and show that he applied to the said board of supervisors on the 17th April, 1871, to correct his said assessment under the act of 22d March, 1871, but they refused to entertain his application because at that time no notice had been given under the said act, which reason, as he is advised and believes, is not tenable; and that said board could then and ought to have heard and decided the same. And complainant further states and charges that the said board did give notice that they would be in session on the first day of May, 1871 (and not before), for the purpose of correcting assessments under said act; but as complainant states and charges, that will be too late to afford him any relief, because by the terms of that act, the power of said board will have ceased for any such purpose, and they will have no right or power to entertain any application for that purpose.     *     *     *     *
Complainant states and charges that he proposed and offered to pay said (tax collector) on the 28th April, 1871, all the taxes he was justly due, to wit: $212.37, but said (tax collector) refused to accept that unless complainant would pay all, to wit: said sum of $451.45, and complainant is ready at any and all times to pay said sum of $212.37.

"Complainant states that unless restrained, said tax collector will add 50 per cent on said tax after May, 1871, and will proceed to advertise and sell the property of complainant for the same, and that great injustice and oppression would be inflicted upon complainant;" whereupon he prays for a perpetual stay as to the excess above set forth.

There was a demurrer to the bill which was sustained and the bill dismissed, whereupon complainant appealed to this court, where the following errors are assigned, to wit: 1. That the court erred in sustaining the demurrer to the bill; 2. In dismissing the bill; 3. In an award of execution against appellant and his sureties on the injunction bond for unpaid taxes.

It will be observed of this bill, that it does not charge fraud on the part of the officials, nor that property not belonging to the complainant, or not subject to taxation, was included in the levy, but that the error was, substantially, one of judgment, and the question for our determination is, only, whether a court of equity can solve the problem presented in this record.

From our present examination we are under the impression that legislation in this state is deficient in its remedies in this class of cases, while, in most if not all the other states, statutory provisions for review, appeal, *certiorari* and *mandamus* are minute, full, and ample to meet every case that may arise.

Were it conceded by the answer that the excess of valuation and tax, as stated in the bill, correctly fixes the line between the true and the erroneous assessment, there might be no harm in enjoining the excess, but the question is, can our court of chancery, without legislation, proceed, upon the facts stated in the bill to take testimony, doubtless conflicting in its valuation, several witnesses giving each a different estimate, and upon these various opinions, determine the proper assessment?

We infer from the bill that the assessment of the property of the complainant was under ch. 4, p. 24, Pamphlet Acts, 1870, by which, sec. 2, it is made the duty of the assessor to call on each taxable inhabitant for a list of all taxable property under oath.   Sec. 3 requires "the assessor to list each and every person in his county, and assess all the property, personal or real, therein," and at the regular meeting of the supervisors

of the county in August, 1870, and annually thereafter, "the board shall proceed to equalize the valuation of the real and personal property throughout the county." Sec. 12 provides for a meeting of the board of supervisors on the second Monday of August, 1870, and annually thereafter, "to hear and determine appeals from the decisions of assessors, authorized by this act to be taken, and to make all proper corrections of the assessment lists."

Recurring to section 3, it will be seen that "appeals" are allowed only from the assessment of the assessor, "where any person shall refuse to give in a list of his property; and it is declared that the decision of the board upon such appeal shall be final."

By the second subdivision of that section, it is provided, that "any person who may feel aggrieved at anything in the assessment of his property may appeal before the board of equalization, either in person or by agent, and have the same corrected in such manner as to the said board shall appear just and equitable, and from the decision of the board there shall be no appeal."

By a part of section 1, ch. 5, p. 38, Pamphlet Acts, 1870, it would seem that the legislature intended to extend the time of meeting of the supervisors as a board of equalization, from the second Monday of August (as provided in ch. 4, sec. 12, *supra*) to any time between that date and the first day of November; but, by the latter paragraph of the same section, such meeting would appear to be limited to any Monday in August for the aforesaid purposes, the section being drawn with the blindness and contradiction for which legislative enactments ought not to be obnoxious.

By ch. 34, p. 92, Pamphlet Acts, 1871, the boards of supervisors of the several counties of this state were empowered to correct all erroneous assessments; for which purpose they were required to hold a meeting of not more than five days in each county, after giving

ten days notice by publication or posting, and it was further provided therein, " that this act shall take effect and be in force from and after its passage, and continue in effect until the first day of May, 1871," which enactment became a law by approval March 22, 1871.

It is a well known rule, that every citizen is presumed to know the law. Accordingly, the complainant is chargeable with knowledge of the provisions and terms of ch. 3 and ch. 4, Laws of 1870, above referred to, and of his duty and right to appear before the board of equalization on the second Monday of August, 1870, or at any time thereafter prior to the first day of November of that year. Whether he attempted to avail himself of that right is not stated in the bill. He does, however, aver that he demanded the correction of the assessment of his property on the 17th of April, 1871. The inference, as well as the presumption, is, that he neglected the opportunity of seeking such correction during the period allowed in 1870. Probably, however, the assessment, as a matter of fact, was not completed in time to apply for a correction of errors within the period prescribed in chapters 3 and 4, *supra*, though the bill fails to so aver, and hence the case of the complainant has not the full benefit of a want of opportunity or a denial of a hearing upon a proper demand.

Under the law approved March 22, 1871, demand of correction was not made until April 17, when the time limited by that statute had nearly expired. It may be inferred from the course of legislation, that the assessors and supervisors of 1870–'71 were dilatory, if not ignorant and inefficient. Whether these facts ought to have induced greater diligence on the part of the complainant, or whether they commend him to the favor of a court of equity, it is hardly worth while to inquire or indicate, further than to remark that, in this class of cases, the courts uniformly hold the party seeking

relief to strict diligence in availing himself of every opportunity afforded by statute for the correction of alleged errors. There was open to the complainant the proceeding by *mandamus* to compel action by the board of supervisors, though between March 22d, when the law was approved, and April 30, 1871, when it expired by its own limitation, there was scarcely time to have reached a conclusion. But, suppose it be conceded that the complainant was wholly without fault, and that the failure to correct the errors of assessment rests entirely upon the board, is it in the power of chancery to afford the relief asked? In response to this question, we are compelled to answer, that we have sought in vain for an authority in support of the affirmative of the proposition involved. Undoubtedly, as a general proposition, fraud or accident, the latter being without fault of the party' seeking redress, are just grounds of equitable jurisdiction; but fraud is not charged in this case, and the assessed value set forth is not so disproportioned to the alleged value as to furnish evidence of corruption or fraud, nor do the facts stated as to the failure of the board to act upon the assessment afford such evidence. But, again, if fraud or accident were so averred as to give equity jurisdiction, the question would recur, ean a court of chancery, in case of conflict of valuation, determine the real value of the assessed property? If, in the assessment of property and the levy of taxes, a party is wronged by fraud or accident, equity, as a general proposition, as in all judicial proceedings, ought to interfere; but could it do so to the extent required in the case at bar? The question is answered in the negative in the Albany & West Stockbridge R. Co. v. the Town of Canaan, 16 Barb. 244. In that case the bill alleged that the assessors, in order to make up the valuation of $300,000, at which they had assessed the road of the plaintiffs, included therein the sum of $250,000 on account of the capital stock of the company being above

par, and on account of the prosperity and productiveness of the road. The court say: "When, therefore, besides estimating and assessing the nine miles of the plaintiffs' road lying in the town of Canaan, with the superstructure and erections thereon, 'at its full and true value,' they proceeded, if so they did, to add anything to the valuation, by reason of the increased cost of the road, or on account of its income or productiveness, so far they transcended their authority, and their act is void. If, as the plaintiffs allege, the assessors have increased their valuation $250,000, for the reason that the road is doing a profitable business, and the stock of the company is worth more than par, such increased valuation is not the less an excess of jurisdiction because it added to the appraised value of the real estate itself, and the whole amount inserted in the assessment roll, as the assessors' valuation of the real estate. It may be more difficult to discriminate between 'the full and true value of the real estate,' and the amount added upon other grounds. Indeed, in most instances this will be impossible. But when, as in the case of the Albany & Schenectady Railroad Co. v. Osborn, the assessors frankly avow the basis upon which they proceeded in making their assessments, so that the court can distinguish between what is legal and what is unauthorized, the assessment, to the extent that the assessors have gone beyond their authority, may be declared void.  *  *  * The difficulty in all such cases is, not that the act of the assessors, where they exceed their powers, is not illegal, nor that the courts have not authority to declare their illegal acts void, but in ascertaining the basis upon which the assessment was actually made." Elsewhere, the court also say: "The valuation of the assessors, so long as they confine themselves within this rule" (a rule previously stated confining the valuation to the actual value, irrespective of the profits of the road), "however grossly they may err in their estimate, is conclusive.

Like the verdict of a jury, the amount is not to be questioned. The tax based upon the assessment is like a judicial sentence, and can only be attacked for fraud or excess of jurisdiction." Referring to the statutes of New York, the court say: " There is, therefore, no longer any check upon the power of assessors in fixing the value of taxable property, so long as they profess to follow the rule of valuation prescribed by statute;" unless " in cases of corruption or fraud;" and, " then, as in other cases of fraud in judicial proceedings, a court of equitable jurisdiction might interfere." In connection with the last remark, Huggins v. King, 3 Barb., S. C. Rep. 616, is referred to, which, on inspection, merely states the simple rule, that fraud is a just ground of relief in equity against a judgment so obtained in a court of law.

The Methodist Protestant Church v. the Mayor and City Council of Baltimore, 6 Gill, 391, was a bill filed to enjoin the collection of a tax for the improvement of streets. The court say: " Another, and it is conceived, a conclusive objection to the injunction issued in this case, is, that by the ninth section of the ordinance of March 9th, 1841, No. 10, and of May 15th, 1846, No. 59, on an appeal from the proceedings of the commissioners, the city court are authorized, after an examination into the same, in the mode therein pointed out, to amend or supply defects and omissions in the return and proceedings of the commissioners, and alter, modify and correct the said record of proceedings in all or any of its parts, as it shall deem just and proper. To the court of chancery or county court, sitting as a court of equity, no such power is delegated; nor can it be lawfully or judiciously exercised by those tribunals. To persons aggrieved by the proceedings of the commissioners in cases like the present, the legislative enactments upon the subject have provided the tribunal and means of redress, and there only can it be successfully sought. To sustain a court of equity, in the exercise of

the power it has assumed, would, in effect, be conferring upon it appellate authority, when it is wholly incompetent to administer justice and render full and adequate relief to all concerned; on whose rights, if it act at all, it ought to adjudicate."

The State v. Quaife, 3 Zab. 89, was a *certiorari* to review assessments. The court say: "If an assessment is made, and sustained upon erroneous principles, the error, if made manifest, may be corrected, but this court cannot revise the judgment of the commissioners upon the mere ground of an excess of valuation. * * * * If the tax assessed upon the prosecutor was so greatly exorbitant as to show gross partiality, or be persuasive evidence of corruption and fraud, perhaps the position might be sustained. This we take to be the only aspect in which it would be proper for the court to examine into the amount of the assessment, and to consider its reasonableness in reference to the value of the property taxed." In that case, a portion of the tax levied, being admitted to be illegal, was set aside.

In Howe v. the City of Boston, 7 Cush. 273, the remedy of a tax-payer in case of over-valuation or too high a tax, is held to be "by application to the assessors for abatement; and, on their refusal, by an application to the mayor and aldermen or county commissioners, in the manner prescribed by the statute. * * * It is an entire tax, rightfully laid, and if excessive in amount, it is an over-valuation only."

The following cases are cited to show, 1. The legislation and practice in this class of cases in other states; 2. That the theory of the complainant in the case at bar is untenable in its broadest application; 3. That tax-payers in Mississippi are not sufficiently protected by legislative remedies against excessive, erroneous and illegal assessments. 15 Barb. S. C. 607; 40 N. H. 203; 42 ib. 282; 37 Penn. St. 371; 43 Ill. 428; 42 ib. 9; 23 Ark. 137; 18 Md. 1.

The third assignment of error presents for construction section 1751 of the code of 1871, the question being, what shall be included in the final decree under this section? The answer is furnished by the provision referred to, viz.: "Upon a dissolution of any injunction hereafter granted, to enjoin or delay the collection of any such taxes, so levied or imposed upon any person or property in this state, the chancellor or court ordering such injunction to be dissolved, shall enter a decree against the person suing out the same, and his securities on his injunction bond, for ten per cent on the amount of all taxes, the collection of which was so enjoined or delayed, and all costs of suit;" or, more briefly, the decree shall be, "for ten per cent on the amount of all taxes * * * enjoined * * * and all costs of suit." The taxes are not included, and are of course remanded to the tax collector for collection. The taxes enjoined in the case at bar having been included in the decree to be collected by the process of the chancery court, it follows that the third assignment of error is well taken.

The decree in this case is reversed and the cause remanded, with instructions to the proper court to enter a final decree in accordance with the views herein expressed, to wit: the complainant having failed to state any title to equitable relief, the bill will be dismissed, and the decree will include for collection by the process of the chancery court, ten per cent on the taxes enjoined, together with all costs of suit.