YAZOO DELTA LUMBER CO. *v.* D. M. EASTLAND.

[61 South. 597]

TAXATION.    *Assessment.    Collateral attack.    Code* 1906, *section* 4296.
Under Code 1906, section 4296 providing that "all persons who
fail to file objections shall be concluded by the approval by the
board of supervisors," the judgment of the board of supervisors
approving the assessment roll cannot be attacked collaterally by
proving matters *in pais,* going only to the evidence upon which
the final judgment of the board rested.

APPEAL from the chancery court of Sunflower county.
HON. E. N. THOMAS, Chancellor.

Suit by the Yazoo Delta Lumber Company against
D. M. Eastland, From a judgment for defendant, plain-
tiff appeals.

The facts are fully stated in the opinion of the court.

*Frank E. Everett,* for appellant.

First, this testimony of Weissinger, is competent. It
explains the manner in which the assessment of the lands
of the county was made in 1906. It does not impeach or
tend to impeach his official acts but simply explains how
the assessment was made. See *Brothers* v. *Beck,* 75 Miss.
486, in which case this court held Dan McCaully, the tax
assessor, a competent witness to testify as to how his as-
sessment roll was made, completed and returned, not
in express terms, but by commenting on the testimony of
that witness, after a motion was made in the lower court
to suppress his testimony. To the same effect see *Mul-
lins* v. *Shaw,* 77 Miss. 900. See also *Stevenson* v. *Reed,* 90
Miss. 344, where the court held Miller, the sheriff who
sold the land, at tax sale, a competent witness to explain
how the land was offered and sold. See also *Wood* v.
*Ins. Co.,* 7 Howard, 632; *Clevenger* v. *Mixon,* 74 Miss 74;
1 Wigmore on Evidence, secs. 529, 530 and 531.

At the time this assessment was made in 1906 the Code of 1892 was in force and effect. Section 3772 of the Code of 1892 provides that, "Land shall be assessed according to its intrinsic value, to be judged by the owner or person having possession or charge thereof, under oath, taking into consideration the improvements, the proximity to navigation, to a railroad, to a city, town, village or road, or any other circumstances which tends to enhance its value, and not at what it might bring at a force sale, but what the owner would be willing to accept and expect to get for it if he were disposed to sell it."

Section 112 of the Constitution of Mississippi adopted in 1890 provides that, "Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value."

This is the way the law requires lands to be assessed. How else could they be assessed other than according to the strict provisions of the Constitution and the statutes? How can an assessment be made so as to make "taxation uniform and equal" and tax property "in proportion to its value?" The testimony of Weissinger shows how the lands in Sunflower county were assessed and placed on the land rolls in 1906. That the assessment was made in pursuance to an understanding between himself and the board of supervisors prior to the making of the assessment by him, and this agreement was that "all wild lands should be assessed at three dollars per acre and all cleared lands should be assessed at ten dollars per acre." clearly in controvention of the statute and the Constitution. I submit that this mode of arriving at the value of lands and this mode of assessing land in a county, is equally as void and repugnant to the Constitution as the act of the legislature in 1888, which act undertook to classify lands of the state and to place them in eight different classes and to place a value thereon, assessing by legislative enactment and valuing the various classes of lands, leaving nothing for the assessor to do but to de-

termine the class to which each piece belonged. The same principle is involved in this case, except, in the act of 1888, the assessor could arrive at a more just assessment than in this case. For there, he could place each piece of land, regardless of its location, in the class to which such land belonged. If one forty-acre tract was fertile and productive and.improved and another.forty-acre tract was worn, hilly and nonproductive, he could exercise his discretion in classifying the lands and cause the fertile land to be assessed at its value and the unproductive land to be assessed at its value, thereby reaching a more equal assessment according to value. But in the present case, under the instructions of the board of supervisors, which body finally had to pass upon the assessment returned to them by the assessor, in order to avoid that work which the law enjoins upon them to raise or lower property and equalize the assessment after the rolls are made, both the assessor and property owners are robbed of that duty enjoined upon them by law and the property is, by these instructions of the board of supervisors, assessed at an arbitrary valuation, assessing lands worth fifty dollars per acre at the same rate of those worth only one dollar per acre, regardless of location, value, improvements or other advantages. If the legislature could not divide the lands of the state into eight classes and place a statutory value on each class, then how can the board of supervisors and the tax assessor classify the lands of a county into two classes and place an arbitrary value thereon, regardless of the location and value of the property? Surely such a classification and valuation by the assessor and the board of supervisors will render the assessment void, and under such an assessment, the tax collector is without power to sell the property for taxes.

In considering the same question that is presented by this record, that is, classification and valuation of property, Governor Stone, the greatest of Mississippi's governors, said in his message to the legislature in 1892:

"Value depends on many things. It varies greatly with circumstances, even in the same localities, and to place groups of counties and millions of acres of land by arbitrary enactment in prescribed classes, with a valuation of each prescribed by statute, without regard to what may be the true value, would be a plain disregard of the constitutional provisions of this important subject."

This court, speaking through Justice CALHOUN, in the case of *Hawkins* v. *Mangus,* reported in the 78 Miss. 105, declaring the act of 1888 unconstitutional, said in part:

"This act does not admit of taxation of 'all property in proportion to its value,' as the Constitution requires, but adjusts it according to the opinion of the assessor, not of its real value, but as to what general class it ought to be put in. . . . Valuation must be actual, not artificial; by particulars, not by groups. A system of averaging values by classes, or geographical distribution, cannot result in equality and uniformity of taxation in 'proportion to value.' "

I therefore submit there is no difference in classification and valuation when fixed by legislative enactment and that fixed by the joint acts of the board of supervisors and the tax assessors. If one is illegal and void, it follows the other is illegal and void. If one is unconstitutional, it follows that the other is unconstitutional. For the board of supervisors, together with assessor, to undertake an equalization of the assessment of the property of the county before the assessment is made and the rolls turned over to the board for their correction is but to violate the law of the land. Section 4297 of the Code of 1906 and section 4 of the chapter 120, Laws 1900, provides that the board shall meet on the first Monday in August of each year and that the assessor shall attend the meeting; and that the board shall examine the rolls and hear and determine exceptions; "and the board shall equalize the assessment and may increase or diminish the valuation of any property so that property of the same value be assessed for an equal sum."

For the board to undertake to pass an arbitrary valuation on lands before the assessment is made and the assessment rolls delivered to it for its consideration as required by statute, is only to undertake to exercise authority repugnant to both the statutes and the Constitution and therefore renders an assessment so made void and of no effect.

*Tim E. Cooper* for appellee.

The appellant's whole case rests upon the proposition that he can collaterally attack the judgment of the board of supervisors approving the assessment roll under which the land was sold by proving matters *in pais,* and going only to the evidence upon which the final judgment of the board rested. It is only necessary to look at the statute to see how clearly it covers the contention of the appellant.

Section 4296 of the Code provides that after the assessment rolls are returned, they shall remain on file and be subject to objections for two weeks after being filed. It then proceeds: ''A person who is dissatisfied with the assessment may, within such time present his objections thereto in writing and which shall be filed by the clerk and docketed and preserved with the rolls. All persons who fail to file objections shall be concluded by the assessment and precluded from questioning its validity after its approval by the board of supervisors or by the operation of law, except minors and persons *non compos mentis.*''

There have been numerous decisions of this court upon this statute, which have appeared in many of our codes. In *Brooks* v. *Shelton,* 47 Miss. —— it was held that a taxpayer who had failed to pursue the statutory remedy of appearing before the court, as provided by section 4296 and of appealing from the judgment of the board as provided by section 4310, could not have relief in equity.

In the case of *Horne* v. *Green,* 52 Miss. ——, it was held that the action of the board of supervisors was conclusive

as to "irregularities and matters of fact resting wholly *in pais;* such, for instance, as excessive valuation, misdescription, listing of property to the wrong person and the like. It was then said that the board of supervisors had no jurisdiction to determine upon the validity of exemptions claimed under general laws. The decisions of this court have been uniform on this subject. From the case in 47th down to and including the case of *North* v. *Culpepper* reported in 50 So. 419.

My purpose in filing this short additional brief is not that of making any clearer to the court the proposition that the judgment of the board of supervisors is *res judicata* on the question of valuation. If that is not concluded by all the decisions which have been made upon the subject, no question can be considered as settled. I file this brief rather for the purpose of calling the attention of the court to the manifest distinction between the cases holding the judgment of the board of supervisors *res judicata* as to all matters *in pais* covered by its approval of the roll and the cases cited by counsel for the appellant.

In *Brothers* v. *Beck,* the evidence of the assessor, Dan McAuley was not introduced for the purpose of showing how valuation was arrived at, but for the purpose of showing when the roll itself was returned. This is made entirely clear from what Judge Woods said on the subject. Of course, if the roll was not returned at the time required by law and was not received and approved by the board of supervisors at the time required by law, there was no judgment of the court because it only could meet and make a judgment at the time and at the date specified under the statute. It is quite evident that the court was construing the single question as to whether there was a legal judgment of the board of supervisors. Judge Woods, delivering the opinion, said:

"From the minutes of the board of supervisors, from the roll itself, and from the evidence of the witness Dan McAuley, the deputy assessor who made out the roll, it is

made certain that the roll was not received and approved
by the board of supervisors in July, the time required by
law.   It is equally certain that the roll was not received
and approved by the board of supervisors at the August
term of that body as, by the curative act of March 12,
1884, the board was authorized to do.   In fact, it abund-
antly appears from the evidence referred to that the roll
was only received and approved by the board at its Sep-
tember meeting.   The curative act had no effect, there-
fore, because of a failure of the board to act, as directed
by the terms of the act itself.

The next case referred to by counsel for appellant is
that of *Mullins* v. *Shaw*, 77 Miss. ——.   It will be ob-
served that in this case as in the case of *Brothers* v. *Beck,*
the sole question was, when the roll was returned to the
board of supervisors, in addition to the evidence intro-
duced in the case of *Brothers* v. *Beck,* it was sought to
support the judgment approving the roll by parol evi-
dence that the roll had in fact been returned at a time
other than that shown by the record.   The court, however,
held the evidence incompetent, showing "A record im-
ports absolute verity and must be tried by itself; it can-
not be impeached by parol evidence.   The record of the
proceedings of the board of supervisors clearly shows
that the assessment roll of the lands of 1883 was not filed
with the clerk of the board of supervisors until Septem-
ber, 1883."

The court will bear in mind that to give the board of
supervisors jurisdiction to pass finally upon the assess-
ment, it is necessary that the roll shall be filed with the
clerk a specified number of days before the court meets.
This is a jurisdictional point and if the roll is not so filed,
the judgment is a nullity.   But nothing that was said in
either of these cases remotely suggests that when, as
here, the roll is filed at the proper time and the board of
supervisors acts at the time and place required by law, its
judgment can be impeached by proof of matters *in pais.*

In *Stevenson* v. *Reed,* 90 Miss. 344, the single question involved was, whether it was competent to show how an act *in pais* following the judgment, was performed by the officer. The point there made was that the land was not offered for sale in forty-acre tracts, as required by the statute. It was not pretended, and of course could not be, that this fact might not be proved by parol. It was an act *in pais* and could only be proved in that way. The single question involved in that case was, whether the sheriff was competent as a witness to show that he had sold the land in violation of the statute. The question was as to the competency of the witness and not as to. the competency of the evidence. *Wood* v. *Insurance Co.,* 7 Howard, 632, involves only the question of the competency of the witness.

The only other case referred to by counsel for appellant is that of *Hawkins* v. *Mangum,* 78 Miss. 105. The distinction in this case is perfectly manifest.

The legislature in 1888 had swung clear of the constitutional scheme of assessing property through the executive officers and itself sought to make an assessment. This, the court held, could not be done and that the act itself was unconstitutional. Of course it is not necessary to pursue this case further. The whole law was void under which tax proceedings were held. There was no judgment of a competent board proceeding under a valid law. The whole scheme was infected with illegality. In the present case it is not denied that the statute is constitutional; that its terms were complied with by the board of supervisors. The whole objection is that a matter *in pais,* if permitted to be proved, will show that there was not uniformity of valuation.

The sufficient reply to this, under all the authorities, is that the owner of the land had a perfectly clear remedy pointed out, of which he failed to avail himself and that the statute expressly declares that unless objections are made and submitted to the board of supervisors, its judgment shall be conclusive.

*Chapman & Johnson,* for appellee.

Section 3772 of the Code of 1892, providing the manner in which lands shall be assessed, is directory to the assessor, and his failure to act in accordance therewith surely would not render the assessment void, and a sale thereunder void; should the assessor fail or refuse to follow that section, the owner of the land is provided with an adequate remedy. The assessment roll, under the law in force at the time of the assessment complained of, remained on file for a certain length of time subject to objection, and any person who was dissatisfied with the assessment could, within such time, present his objections thereto in writing, and these objections were heard and passed on by the board, and a person, dissatisfied with the finding of the board, could appeal, and any person who failed to file his objection was concluded by the assessment and precluded from questioning its validity after the approval thereof by the board of supervisors, or by operation of law. See Laws 1900, chapter 120, section 4 and sections 3787, 3788, 3793, 3794, etc., of the Code of 1892. The action of the board of supervisors in matters of assessment is conclusive as to mere irregularities and matters of fact resting *in pais,* such as excessive valuations, misdescriptions, listing of property to the wrong person, and the like. 37 Cyc. 1108; *Horn, Tax Collector* v. *J. & T. Green,* 52 Miss. 452; *City of Meridian* v. *Phillips,* 65 Miss. 365; *Railroad Co.* v. *Adams,* 81 Miss. 104. It is undisputably the law that the approval of an assessment by the board of supervisors, in the absence of fraud, is conclusive as to the validity of the assessment as against the taxpayer that he is liable for the taxes on the property shown on the roll, and as against the taxpayer and the public that the value of the enumerated property is here correctly given. In the case of *Moores* v. *Thomas et al.,* 48 So. 1025, the court says: "It is the duty of the owner of land to give it in to the assessor, and, if he does not, the assessor is to assess it. Sec. 3772. The as-

sessor is to call on each person for a list of his personal
property. Sec. 3754. Not so as to land; nor is any oath
required as to land, the assessor must assess it as best he
can. A time is fixed for all objections. Sec. 3787, *et seq.*
If the negligent owner has left the assessment to the as-
sessor and has any objections to the assessment, he
should make them at the time prescribed, failing in which
he must pay on his own. If not, it must be sold, and if not
redeemed, it is lost to him. Our law is extremely liberal
to the owner. He must know his own and pay the taxes
on it, or lose. Every opportunity is given for the cor-
recting of errors and prevention of injustice. It is only
by neglect and failure of plain duty that loss can come.
The statute has been trying for many years to compel
landowners to pay taxes on their land, and those who dis-
regarded their obligations to the state, and fail to pursue
the laws are entitled to have only themselves to blame.
The owner is bound to look after it, and complain at the
time and in the manner prescribed for all, and if he does
not, he must suffer the consequences." See also 37 Cyc.
1079 (b) and 1082. In the case of *Revenue Agent* v.
*Clark,* 80 Miss. 134, the court, at page 151, says: "It is
conceded by the state that, in the absence of fraud as to
property specified on the rolls, the valuation finally fixed
by the board as conclusive both upon the state and the
taxpayer. The taxpayer is advised by the law of the time
and place when the question of valuation will be finally
settled, and he must then and there attend or take notice
of the final action of the board, and if dissatisfied there-
with, appeal to the next term of the circuit court of the
county. When no appeal is taken, the statute declares the
roll to be conclusive. Code, section 3787. The question
is conclusive of what? It is not conclusive of the fact that
the roll contains all the taxable property of the person
named on the roll, although the list required to be made
by the taxpayer, and the roll made by the assessor, con-
tains a blank for nonenumerated personalty, under the

head of 'amount of all other personal property not otherwise mentioned,' for the Code expressly provided for the assessment of any property that escapes assessment. It follows that the judgment of the board can only be conclusive of these two facts: First, as against the taxpayer, that he is the owner, or taxable for the property shown on the roll; second, as against the taxpayer and the public, that the valuation of the enumerated property is as finally shown on the roll." Under this decision, it is conclusively presumed that the value given by the assessor to the land of the defendant, the Yazoo Delta Lumber Company, is as shown on the assessment roll. The record shows that no objections or exceptions were ever filed by it to the assessment, and no complaint was ever made; the record further shows that the value given to the land by the assessor was the same as now appears on the roll, having been approved by the board of supervisors as required by law. See also *Fox, Tax Collector v. Pearl River Lumber Co.*, 80 Miss. 1; *Yazoo Investment Co. v. Suddoth, Clerk, etc.*, 70 Miss. 416; *North v. Culpepper*, 53 So. 419. The validity of the assessment roll, under review, cannot be successfully attacked on the ground of its unconstitutionality, or for any other reason, because under the proof there can be no controversy that the value given to the land was placed thereon by the assessor; if the defendant, in the court below, the appellant here, failed to object, as it did, to such value, it is now too late to raise any objection, and it is conclusively bound by the value placed on its land by the assessor, which value was approved by the board of supervisors.

COOK, J., delivered the opinion of the court.

Appellant's land was sold by the tax collector for the nonpayment of the taxes assessed thereon. The assessment roll and the order of the board of supervisors approving same appears to be regular and in accordance with the statute. Upon the trial evidence was introduced

to show that the assessor, pursuant to an agreement between him and the board of supervisors, assessed all the lands in the county at the uniform value of $10 per acre for cleared lands and $3 per acre for woodland, without reference to the location or actual value of the land.

There is but a single question in the case: Can the judgment of the board of supervisors approving the assessment roll be attacked collaterally by proving matters *in pais,* going only to the evidence upon which the final judgment of the board rested? Appellant did not appear and make objections to the assessment, and no appeal was taken from the judgment of the board. The chancellor decided that this sort of collateral attack could not be made in a proceeding to confirm the title of the purchaser at the tax sale. In our opinion the chancellor was right. Section 4296, Code 1906; *Brooks* v. *Shelton,* 47 Miss. 243; *Horne* v. *Green,* 52 Miss. 452; *North* v. *Culpepper,* 97 Miss. 730, 53 South. 419; *Moores* v. *Thomas,* 95 Miss. 644, 48 South. 1025.

*Affirmed.*