LAUMAN v. THE COUNTY OF DES MOINES.

1. **Pleading:** AMENDED ANSWER. Where an amended answer is filed as a substitute for the original one, the issues will be ascertained and determined from that alone.

2. **Taxes:** BANK STOCK. The case of *Hubbard* v. *The Board of Supervisors of Johnson County,* 23 Iowa, 130. holding that the taxation of shares in national banks was not authorized by chapter 108, laws of 1866, followed and approved. COLE, Ch. J.. *dissenting.*

3. —— RECOVERY OF TAXES PAID. Where a void, illegal or erroneous tax has been paid, the person paying the same is entitled to recover it back under section 762 of the Revision ; and when the board of supervisors, upon being applied to, refuse to order it refunded, he may commence an action therefor against the county.

4. —— Nor is the rule changed by the fact that the tax collected had, with other moneys, been distributed to the state, school and bridge fund.

5. —— No question is made herein as to whether it was not the duty of the party to appeal from the action of the board. instead of commencing an action against the county.

*Appeal from Des Moines District Court.*

FRIDAY, JULY 29.

PLAINTIFF, in 1865 and 1866, was the owner of fifty shares of stock in the First National Bank of Burlington, in this state.   For these years there was levied upon this stock (assuming the same to be taxable) the taxes provided by statute.   These taxes plaintiff paid to the treasurer,— paying those for 1865, March 31, 1866 ; for 1866, February 23, 1867 — protesting that they were illegal, and taking separate receipts for the same.   He afterward demanded of the board of supervisors that these taxes should be refunded.   The demand was refused, and hence this action to recover the taxes thus paid, amounting to $128.08.   The court below found that the bank stock was not subject to levy ; that the tax was illegal, and

Lauman v. County of Des Moines.

that plaintiff was entitled to recover. From the judg-
ment following these findings defendant appeals.

*F. Springer* for the appellants.

*Hall & Baldwin* for the appellee.

WRIGHT, J. — I. Defendant filed an amended answer,
not an *amendment* to the original. So far as it relates
1. PLEADING: to the issues in the case, then, the first answer
amended
answer.     was superseded by the second. And though
the motion by plaintiff to strike parts of the first answer
(which was sustained), did not extend to the first clause,
or the general denials, yet, as defendant filed an
amended answer, or one which was a *substitute* for the
first, we look alone to this in ascertaining the issues
made and determined. *Bates* v. *Kemp*, 12 Iowa, 99 ;
*Brenner* v. *Cundersheimer*, 14 id. 82.

II. The case then stands upon the amended answer,
demurrer thereto, the action of the court sustaining the
2. TAXES: same, and the correctness of the conclusions
bank stock: of law upon the facts found, the defendant
insisting that the demurrer should have been overruled,
and that there was error in rendering final judgment for
plaintiff. The questions made upon the demurrer, and
the sufficiency of the facts found to warrant the judg-
ment, are very nearly the same, and they will hence be
considered together.

There was no authority to levy or collect these taxes.
This is scarcely denied in the argument, and was ex-
pressly held by a majority of the court in *Hubbard* v.
*Supt. of Johnson Co.*, 23 Iowa, 130. This, therefore, is
taken as part of the law of this case, the chief justice
now, as in the case cited, dissenting. It is proper to say
that the recent case of *The First National Bank* v. *The
State of Kentucky*, in the federal supreme court, does not,

as far as we are able to judge (we have but the statement of it found in Western Jurist, vol. 4, 198), interfere in the least with the prior rulings of that court, upon which the Hubbard and other similar cases, in this and other states, were based. In this last case, the question was, whether the state might enforce the collection of a tax through the bank, which had been legally levied upon shares, under the state law.

Starting then with the proposition that these taxes were levied without the authority of law, that there was hence neither legal right nor power to collect the same, we are the better prepared to dispose of the remaining question, stated by counsel and argued on either side, we take pleasure in saying, with the most patient care and distinguished ability. It is conceded, that when money has been voluntarily paid, in consequence of a demand as of right, with a full knowledge of all the facts, there being neither duress, fraud nor compulsion, the mistake being one of law, not of fact, it cannot, as a rule, be recovered back. Upon the question whether the payment of a tax is involuntary, when made after the officer has his duplicate and warrant, and is proceeding with his collections, having authority to make a seizure of property to pay the same, the cases are not agreed. For myself, I incline to the doctrine, that when the money is thus paid, the tax payer at the time protesting against the legality of the levy, and the same is shown to be void, without right to enforce its payment, it is not voluntary within the meaning of the rule, and hence may be recovered back. I do not propose to enter upon the discussion of the authorities upon either side, and, in saying this much, I but express my own present impressions, coming at once to the decisive point of the case upon which we all agree. We have a statute which declares, that, in all cases where

*3. —— recovery of taxes paid.*

Lauman v. County of Des Moines.

any person shall pay any tax, interest or costs, or any portion thereof, that shall afterward be found to be erroneous or illegal, whether the same be owing to erroneous or improper assessment, to the improper or irregular levying of the tax, to clerical or other errors or irregularities, the board of supervisors shall direct the treasurer to refund the same to the tax prayer, and in case any real property, subject to taxation, shall be sold for the payment of such erroneous tax, interest or costs as above mentioned, the error or irregularity in " the tax may, at any time, be corrected as above provided, and shall not affect the validity of the sale or the right or title conveyed by the treasurer's deed." Rev. § 762. This statute, if it means anything, entitles the plaintiff to have this money refunded. It is no part of our duty, perhaps, to inquire into its propriety or necessity. And yet it must not be forgotten that ours is conceded to be a " most stringent tax law ;" that it seems to have been drawn for the purpose of preventing courts from reverting to those constructions so common, and not regarded as unreasonable, in tax title cases (*Allen* v. *Armstrong*, 16 Iowa, 510); and that the legisture, while protecting the purchaser, intended, at the same time, to give a liberal rule for the recovery of taxes paid, which were found to be erroneous or illegal ; and this, whether the payment was with or without protest. Hence, it will be observed, that these errors or illegalities shall not affect the validity of the sale of land made for such erroneous or illegal tax.

The county is then protected, for it but returns what it collected, either from the tax payer or the purchaser at the tax sale ; and in this there is certainly nothing either unjust or unreasonable. The language is plain and unambiguous. It is no part of our duty to adopt any other rule than that given in and by its terms. If this tax was illegal (and this was, thereafter, so found and

settled), then it was the duty of the board to refund the same.

Cases arising in other states, where they have no such statute, are of but little assistance, giving us next to no aid. To recover this money, it makes no difference that plaintiff failed to seasonably apply to the county board of equalization, nor that he knew the property was treated as taxable, nor that he may have assisted in listing the same.

If, notwithstanding all this, it was thereafter found, that is, *after he had paid the same*, to be erroneous or illegal, the supervisors are required to refund the same. And thus it will be seen that the citizen has a continuing security that his tax, if paid under an illegal or erroneous assessment or levy, shall be returned to him. The law thus, as it were, holds out an inducement to him to be prompt in rendering aid to the assessor and in the payment of his taxes.

It makes no difference that the money thus collected has, as it is called, been distributed, a part to the state and some to the school fund, and still another portion to the bridge fund, etc. The law treats the tax as one sum, and requires the board to refund it all; not that which belongs to the county alone, but all of it. The county through its treasurer, is treated as the custodian of this fund, illegally or erroneously collected, for the use and benefit of the tax payer. And such is the relation of the county to the bridge and road fund, and the like, and such the relation of the state to the counties, that there is neither hardship nor difficulty in the application of this rule. The bridge fund is but a county tax, collected specifically for the purpose named. And so of other special funds. The order to refund might, if deemed by the board necessary, direct the sum to be taken in due proportion from the several funds. And if so, the several

Lauman v. County of Des Moines.

accounts might be so kept as to save the county from all possible loss from such payments. As to the state, it is equally true that there cannot be loss in requiring the county to meet these demands. It is not too much to say that state funds are always in the county treasury. This being so, or the unquestioned ability of the state to make good these losses being accepted and treated as true, the law imposes upon the county the duty in the first instance to refund this money. It was never intended to turn the tax payer over to the tedious, protracted and expensive remedy of getting his money in parcels from the state or county, and their several funds. This is certainly correct, and must be so from several considerations beyond those thus briefly mentioned, but to these we cannot refer for want of time. They will readily suggest themselves. Nor do we doubt but that the tax payer may recover his money in this form of action, where the supervisors refuse to order the treasurer to refund the same. That they might be compelled by mandamus to make such an order would not defeat this remedy. Upon the refusal to refund, the amount becomes a debt, and may be recovered as such. The county treasurer could not pay this money except upon a warrant duly signed and sealed, as in case of all other moneys in his hands. Rev. § 360. And this warrant could only issue upon the order of the board. The result reached would be the same, if, by other process, he should compel the order to refund, the liability upon the county being the same. No question is made as to whether plaintiff should not have appealed from the action of the board in refusing the order.

Affirmed.