No. 7557.

### CITY OF NEW ORLEANS vs. CANAL AND BANKING COMPANY.

A statute taxing bank stock in the hands of the shareholders, and exempting the stock from taxation in the hands of the bank, does not impose double taxation on the same thing.

After assessment rolls have been legally exposed for correction and closed, is is too late to object to the methods by which the assessors fixed the value of the property assessed. New Orleans vs. Canal Bank, 29 A. 851, affirmed.

There is no provision of the constitution which requires taxes to be levied on a roll made in the preceding year.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers, J.*

*Sam. P. Blanc,* assistant city attorney, for plaintiff and appellee.
*John & W. S. Finney* for defendant and appellant.

---

Sam. P. Blanc, for plaintiff, contended :
First—One of the defenses is, that during the time of making the as-

sessments defendants had on hand, not taking into account the value of its real estate, in United States currency, a value largely exceeding the remainder of their capital and accumulated capital, and, therefore, after deducting the value of the real estate, and such non-taxable property, there could be nothing left for taxation as shares. It cannot prevail. 29 A. 851.

Second—No exemption from taxation can be claimed under any act since 1868, except of property actually used for church, school, or charitable purposes. 31 A. 292, 440, 637, 519 ; 27 A. 646, 376.

Third—The requirement of re-assessment or back assessment is a common exercise of power, and occurs frequently in the laws, and has been held to be proper by the courts. Acts 1872, No. 73, sec. 8 ; Acts 1877, Ex. Sess. No. 96, sec.—; Acts 1878, Ex. Sess. No. 9, sec. 18 ; Dillon Mun. Corp. § 595 ; New Orleans vs. Southern Bank, 15 An. 89.

John & W. S. Finney, for the defendant, contended :

First—The question is whether a man who was assessed in 1877, and had his share of the public burdens apportioned under the same law and at the same time, with other fellow-citizens, can be called on to pay his contributions by a new and different rule established by law after the year.

Periodical assessments are essential to equality and uniformity. Cooley on Constitutional Limitations, p. 496.

But what sort of periodical assessment is that, which after a year has passed reaches back and affects new objects and new values in the hands of a few, while the great mass of citizens remain entirely unaffected. Suppose a certain number of shares barely sufficient to secure a debt had been pledged in 1877, and the debtor became bankrupt? The tax, then, if paid at all, must be paid by the creditor ; for it bears a privilege on the shares. The law makes a different contract for the lender from that which he made for himself. In 1877, he contracted for and was entitled to the security of the whole value of the shares ; by the subsequent law the State and the city take a part. Does not that divest a vested right? 6 A. 610 ; 10 A. 745 ; Const. art. 110.

Second—The mode of assessment was entirely irregular. The third clause of Act No. 9 makes it the duty of the assessor in case the officers fail to furnish a statement as required, to proceed, with the assistance of two taxpayers, to value the property according to his knowledge from the best information he can obtain in relation to it. It is not pretended that any such thing was done. The assessor worked out the result alone from a statement of the bank published in the newspapers on the 30th June, 1877.

Sam. P. Blanc, in reply :

First—"It has often been decided that, where the only defect in a tax was the want of previous legislation, this might be supplied retrospectively." Cooley on Taxation, pp. 228, 229 ; Booth vs. Woodbury, 32 Conn. 118 ; Crowell vs. Hopkinson, 45 N. H. 9 ; Lowell vs. Oliver, 8 Allen, 247 ; Comer vs. Folsom, 13 Minn. 219 ; State vs. Demorest, 32 N. J. 528 ; Barbour vs. Camden, 51 Me. 608 ; Board of Commissioners vs. Bears, 25 Ind. 110 ; Taylor vs. Thompson, 42 Ill. 9 ; Tucker vs. Justices, 34 Geo. 370.

Second—As early as 1856, by act of that year, p. 110, sec. 74, it was provided that real and other property omitted in the assessment of one or more years, when discovered, shall be assessed for the years during which it was neglected. This includes banking capital. 15 A. 90 ; 10 A. 745 ; 5 Gilmore, 418 ; 4 Wall. 173 ; 21 A. 104 ; 10 A. 677 ; 14 A. 853 ; 13 A. 268 ; Dillon on Municipal Corporations, secs. 595, 652 ; 17 Wis. 71, 1863.

Third—There is no proof that the assessment was irregular. The court will presume that they did their duty.

Fourth—This complaint of irregularity cannot be heard here. Defendant had his remedy. 19 A. 475.

The opinion of the court was delivered by

Spencer, J. Paragraph 8 of section 1 of Act No. 8 of the extra session of 1878, approved March 26th, provides for the assessment of " the shares of stockholders in all banks and banking associations in this State ; said shares shall be assessed at their value, after deducting from the capital stock of said banks and banking associations all property otherwise assessed or exempt from taxation ; and said shares shall be included at such ascertained value, in the valuation of the personal property of such stockholders, in the assessment of taxes at the place where such bank or banking association is located, and not elsewhere, whether the said stockholder resides in said place or not." It then requires the president of such bank to furnish a list, etc., of its shareholders, and requires the bank to pay to the tax-collector the taxes on said assessment on account of said shareholders, etc. It then directs that the "method thus provided for assessing bank capital and shares of stock in banks shall be carried into effect in the assessment of the same for the collection of taxes for the city of New Orleans and the State payable in the year 1878," and that the assessments of said property made in 1877 are canceled and annulled.

Paragraph seventh subjects to taxation all property of banks " over and above their capital stock."

Paragraph sixth excepts from taxation the capital stock of banks, " whose shares are assessed in the hands of the stockholders."

The difference between this statute and former revenue laws is simply in the mode of taxing the same thing. Heretofore, the capital was assessed against the bank. Under this act, it is assessed against its stockholders. There is no double taxation here ; for, as we have seen, when the capital is assessed to the shareholders, it is not assessable against the bank.

The present suit is brought by the city to recover of the defendant the sum of $11,925 78, taxes of 1878, being the aggregate amount of taxes assessed *against the stockholders* on the value of their respective shares, and *against the bank* on property, in excess, " over and above its capital stock." In other words, the capital stock is taxed through its ultimate owners the shareholders, and the surplus of property held beyond its capital is taxed through the bank itself.

The defense urged before this court addresses itself

First. To the method adopted by the assessors in the ascertainment of the value of the shares of the stockholders, and of the surplus over and above the capital.

Second. To the constitutionality of that clause of paragraph eighth which directs that the method thereby adopted of taxing bank capital and shares shall be carried into effect for the taxes of State and city payable in the year 1878 ; and that the assessments of such property made in 1877 be annulled.

1. As regards the methods adopted by the assessors to ascertain the values to be taxed, we think the objection, even if well founded, comes too late. After assessments have been made, the law directs the rolls to be exposed and advertised for thirty days, and requires all persons objecting thereto to come forward and claim corrections. Ample opportunity and efficient means are provided to enable the tax-payer to have all errors corrected. If he does not urge his objections within the time allowed, he is thereafter precluded. It may not be amiss to add that the *shares* are assessed to *the stockholders individually*, and it may well be doubted whether the bank can disturb an assessment made against them. At all events, it cannot do so after the legal delays. It is not competent, therefore, for the bank now to dispute either the value of the shares, or the amount and value of its surplus. That is no longer open to dispute. This view dispenses us from the necessity of again considering the question, whether in ascertaining the taxable capital of the bank the assessors are bound to deduct from its capital stock all the legal tender and national currency held by the bank at the time of the assessment. That question was so elaborately considered by us in the case of the city of New Orleans vs. Canal Bank, reported in 29 A. 851, that its further discussion would seem to be useless ; more especially as in that case the Supreme Court of the United States affirmed our conclusions.

2. It is argued that paragraph eighth is retrospective legislation, and, therefore, violative of art. 110 of the constitution of 1868. It has been usual for the legislature to levy taxes for the current year upon assessment rolls made in the preceding year. But we know no provision of the constitution enjoining it so to do.

So far as we can see, it was perfectly lawful for the legislature to adopt a different system, and to levy the taxes of 1878 on an assessment made in 1878. We understand that paragraph to provide that the taxes on bank capital and shares, collectible by the city and State in 1878, shall be calculated, assessed, and imposed according to the plan and method therein directed; and to this end it annuls the assessments made of such property in 1877, and directs an immediate re-assessment. Whereas in 1877 the assessment of this capital was against the bank, it now directs it to be made against the shareholders. It was in substance the assessment of the same thing, in a different way; but without imposing any additional burden. The new assessment in point of fact gave as a result some sixty dollars less taxes than that of 1877. The rate of taxation was *ad valorem*, and the same as that on all other taxable property; and the method of assessment was applicable to all banks and banking associations. The real object of the change of method is manifest. Under the laws of the United States, the capital stock of the national banks is exempt from taxation by any State or municipal authority; but the shares of the stockholders in such banks are thought to be taxable.

The purpose and effect, therefore, of the act of 1878, were, in reality, to lessen the burdens of taxation on the State banks, and other property holders of the State, by compelling the stockholders of the national bank to contribute to the expenses of the government, whose protection they enjoy. We are at a loss to understand in what sense such legislation is retrospective. The act was passed in March, 1878, and provides for the assessment and collection of taxes for 1878. Whether the assessors in point of fact adopted incorrect data, or overestimated the objects to be taxed, we are not at liberty to inquire. At all events, this assessment in 1878 yielded a less amount of taxes than would have been obtained from that of 1877.

We are equally at a loss to perceive in what way the bank or its shareholders are prejudiced. If the tax were levied on the bank, it would be paid out of its funds, and the shareholders would receive that much less. If levied on the shareholders and paid by the bank or by them, the result is precisely the same.

The judgment below was for plaintiff. It is correct, and is affirmed with costs.