IN THE

# SUPREME COURT

OF THE

# STATE OF WYOMING.

## OCTOBER TERM, 1892.

BOARD OF COM'RS OF JOHNSON COUNTY v. SEARIGHT CATTLE CO.

(October 11, 1892.)

OVERASSESSMENT—REMEDIES—RECOVERY OF TAXES PAID—ACTION AGAINST COUNTY.

1. Defendant corporation sued to recover back taxes, alleging that it had no property subject to taxation in the county when the taxes were levied, but that the assessor wrongfully assessed horses and cattle and other property of defendant. It was found by the court, and no exception thereto was taken by defendant, that defendant had some property in the county, and on that a tax was properly levied. *Held* that, the case being one of overassessment, and not one where the assessor had no jurisdiction whatever to assess, the courts, in the absence of any allegation or evidence of fraud on the part of the assessor, could afford no relief, but defendant should have sought to have the excessive assessment corrected by the board of equalization provided by statute for such purpose.

2. Rev. St. § 3055, provides that actions to recover back taxes and assessments must be brought against the officer who made the collection or his personal representatives, except that when the money derived from such taxes or assessments has been actually paid over to any municipal corporation for whose use it was levied, then the action shall be brought against such corporation. *Held*, that under this section no action for the recovery of taxes illegally assessed can be brought against a county, a county not being a municipal corporation within the meaning of the statute. CONAWAY, J., dissenting.

Error to district court, Albany county; M. C. SAUFLEY, Judge.

Action by the Searight Cattle Company against the board of county commissioners of the county of Johnson to recover back taxes paid under protest to have been unlawfully assessed. Judgment was rendered for plaintiff, and defendant brings error. Reversed.

*Nellis Corthell*, for plaintiff in error. *Lacey & Van Devanter*, for defendant in error.

GROESBECK, C. J. The Searight Cattle Company, a corporation, brought suit in the district court for Johnson county to recover back taxes paid under protest to the collector of taxes for Johnson county for the years 1884 and 1885. A change of venue was taken to Albany county, and the cause was tried by the court sitting as a jury upon the amended petition and answer. The demurrer to the amended petition as to the first cause of action relating to the taxes for the year 1884 was sustained, and the cause was heard upon the allegations in the second cause of ac-

777 778

Board of Com'rs v. Searight Cattle Co.

tion and answer thereto, relating to the taxes of the year 1885. No proceedings in error have been instituted on behalf of the defendant in error, and the time for bringing such proceedings has elapsed. The defendant in error alleges in the second cause of action in its petition that it had no property whatever subject to assessment in Johnson county for the year 1885, and that the assessor of that county wrongfully and unlawfully entered the name of the defendant in error on the assessment roll, and also entered on the roll against said name for taxation in said county for said year 5,000 head of cattle, 100 head of horses, and certain other property in said county, which the assessor claimed to be the property of the defendant in error in said county for said year; and also entered against said property as the value thereof the sum of $91,775. This was admitted in the answer except as to the allegation that the act of the assessor was wrongful and unlawful. It is averred therein that the assessment and tax are legal. By demurrer, which was overruled, the point was raised that the county treasurer and *ex officio* collector of taxes should have been made a party defendant, and, further, that sufficient facts were not stated to constitute a cause of action against the defendant and in favor of the plaintiff. At the request of the plaintiff below, defendant in error here, the trial court stated in writing its findings of fact and conclusions of law. They are as follows: "(1) As a matter of fact, that the plaintiff in the year 1885 was the owner of about two hundred head of horses, and of certain ranch improvements situated in Johnson county, and that said horses were located and kept in said county of Johnson in said year, but that the county of Johnson has assessed but one hundred head of said number. (2) As a matter of law, that said one hundred head of horses and said ranch improvements were subject to assessment and taxation in said Johnson county for said year of 1885, and that the tax assessed upon said horses and upon said ranch improvements, amounting to $198.92, was a legal and valid tax. (3) As a matter of fact, that the home range of the cattle of said plaintiff was in Carbon county, Wyoming Terr., in said year 1885; but that the cattle of said plaintiff were accustomed to stray over into Johnson county, and during all seasons of the year were present and ranged in considerable but indefinite numbers in said Johnson county. (4) And as

a matter of law, that said cattle were subject to assessment and taxation in said Carbon county, and not in Johnson county, in said year 1885. (5) And as a matter of fact, that on the 28th day of June, 1886, the plaintiff compulsorily paid to the treasurer of Johnson county the sum of $1,867.60, taxes upon said cattle, horses, and improvements for the said year 1885, as alleged in the plaintiff's petition. (6) And as a matter of law, that $1,648.79 of said sum was wrongfully exacted from the plaintiff." Judgment was rendered for this sum, with interest and costs, against the defendant, and it, as the fiscal board of the county, was directed to lay a tax to pay the same. The defendant excepted to the findings and conclusions against it, filed a motion for a new trial, which was overruled, and it brings error here.

1. The defendant in error is in no situation to complain of these findings of fact and conclusions of law, as it did not except to any of them, and, so far as they are unfavorable, is bound by them, particularly as it has not placed itself in a position to have them reviewed on appeal, and the time has elapsed for instituting proceedings in error to have them corrected. These findings of fact disclose that the defendant in error had personal property, and property savoring of the realty, in the shape of ranch improvements, in Johnson county, for the year 1885, and subject to taxation, and consequently subject to assessment therein. The personal property consisted of horses, and the findings are that but one half of the number thereof were actually assessed. The averments in the answer are not clear as to whether or not the defendant in error listed its property for assessment. The allegation is that the assessor entered the property on the roll "according to the best information he could get as to the amount and value of said property." The petition was evidently framed upon the theory that the defendant in error, the plaintiff below, had no property whatever subject to assessment and taxation in Johnson county, and that the act of the assessor in entering any property on the assessment roll was without jurisdiction and void. The findings of fact are to the effect that there were both personalty and property in the nature of realty subject to assessment and taxation in the county belonging to the defendant in error, and the case must be considered as one of overvaluation or overassessment,

and not one where the assessor had no jurisdiction whatever to assess, as the proof and the findings show that there was in the county property of the same class—that is, personal property—as the cattle assessed, subject to assessment therein, and that the action of the assessor was not wholly void for lack of jurisdiction to assess for taxation. The trial court held that the assessment was erroneous as to the cattle, as they were taxable elsewhere, their *situs* for taxation being in Carbon, and not in Johnson, county. It is the duty of the assessor to list and assess all property in his county subject to taxation and assessment there, and it is the duty of the taxpayers, and those having property which they are required by statute to list, to assist in listing the same on or before the third Monday in June of each year. In case the assessor is unable to see the taxpayer, after using all due diligence, or where the taxpayer or person required to list property for assessment and taxation refuses to make out a list of the same, the assessor is required to "assess such property according to the best information he can get." A penalty of $200 is imposed upon the person refusing to list when required to do so, or in refusing to make the oath required by law, after listing his property, that the inventory of property is correct. Rev. St. §§ 3797, 3798. Although there is no direct averment, either in the amended petition or in the answer, as to whether the assessor was unable to "see" the defendant in error, or its proper officers or agents, for the purpose of demanding a listing or inventory of its property in Johnson county subject to taxation, or whether, after such demand, the defendant in error refused to list its property, it is quite certain that the allegation in the answer, that the assessor from one or the other of these reasons entered the property on the assessment roll "according to the best information he could get as to the amount and value of such property," is true. It is not disputed, either in pleading or proof. It may be true that, where a tax is founded on a fraudulent assessment, a court might interfere, but in such cases the fraud must be alleged and proved, as all presumptions are to the contrary. Cooley, Tax'n, pp. 784, 785. There is neither allegation nor proof of fraud on the part of the assessor, and no averment or proof that the assessment was fraudulent. The charge is that the

v.3wyo.—27

assessor acted without jurisdiction, because there was no property of the defendant in error subject to assessment or taxation in Johnson county for the year 1885, while the findings and the evidence are that there was some property of the defendant in error at that time in the county subject to assessment and taxation.

It was incumbent on the defendant in error to list what property it had for assessment in that county, no matter whether it was a large or small amount. It evidently failed to do so, and this, for aught we know to the contrary, may have been a refusal to list after demand therefor by the assessor. In such cases, as it has been said, the derelict party is subject to "the doom of the assessor." There can be no just cause for complaint, if a party evades the assessing officer, and is accordingly rated for assessment excessively. But our statute has provided an ample remedy for those aggrieved, even where they have not returned their property for assessment. The board of county commissioners sits as a board of equalization, or, as the statute puts it, "a board of equalization for the correction and completion of the assessment roll." Two meetings of this board are provided, one commencing on the fourth Monday of June, and continuing in session not exceeding 15 days, and the other beginning on the fourth Monday in July, and continuing in session for not less than 3 nor more than 6 consecutive days. At the first meeting this board is empowered and required to "hear and determine the complaints of all persons, companies, associations, and corporations feeling aggrieved by the assessment of their property as returned by the assessor, and, for the purpose of equalizing the assessment roll, the said board may increase, diminish, or otherwise alter or correct any assessment or valuation." Rev. St. § 3801. In section 3802 of the Revision, any person aggrieved at anything in the assessment of his property may appear before this board of equalization, either in person or by agent, within the time mentioned in section 3801, and have the same corrected in such manner as to said board shall seem just and equitable; and it is made the duty of the assessor of each county, when assessing, to give to each person assessed a printed notice of the time and place when and where this board of equalization shall meet. Here is a statutory and a personal notice pro-

Board of Com'rs v. Searight Cattle Co.

vided for, of which the defendant in error could have availed itself, even though it failed, neglected, or refused to list for the assessor its property actually subject to taxation in the county of Johnson. No complaint is made that the personal notice required by the statute to be given by the assessor of the time and place of the meeting of the board of equalization for the county was not given. In the absence of allegations or proof to the contrary, we must presume that the assessor as a public officer performed the duty imposed upon him by statute, and gave such personal notice to the defendant in error. It must be presumed to know the law as well as a natural person, and the statutory provision fixing the time of the meeting of the board would probably be sufficient notice of the time of the meeting of the board of equalization. "If a taxpayer has a grievance to bring before the board, he should be present on the first day of their meeting and state his grievance, or notify them that he has a complaint to present, and request them to set a day during the term in which he can be heard. It is a salutary principle of law that every person is bound to take care of and protect his own rights and interests, and to vindicate them in due season, in the proper time, place, and manner pointed out by law, and if a party, having the proper means of defense in his power, fails to use them, he will not be aided by the courts." State v. Railroad Co., (Nev.) 30 Pac. Rep. 693. There is no provision for appeal from the action of the board of equalization in our law, and no method provided for reviewing its action. Unless fraud be imputed or alleged and proven, it is clear, in the absence of statutory provisions regulating the procedure and granting a review by the courts, that no court has any revisory power over such a tribunal, clothed with legal, and, as the statute provides, with equitable, powers, while acting in its legitimate sphere. It would cause interminable confusion to permit the courts to act as such a board. The relief would of necessity be summary in its character, and in most cases would preclude an appeal to a court of review. The sovereign right to tax would be impeded or made of no avail, and the most protracted litigation would ensue. Nowhere in this record can we inform ourselves whether or not the defendant in error ignored this plain, simple, and ade-

quate remedy provided and prescribed in the simplest terms for the benefit of all of the taxpayers of the jurisdiction as a relief from the oppression, fraud, partiality, or mistake of the assessing officer. In the absence of any showing to the contrary, it is but fair to presume that this remedy was not sought. Surely, before any relief could be afforded by any court in such a case as this, the party complaining should have shown that it had exhausted its statutory remedies, or that they were insufficient or inadequate to afford him relief. Our statutes relating to the recovery back of illegal taxes do not cover taxes based on excessive assessments. If the assessment were wholly void for lack of jurisdiction to tax, because the *situs* of the property is elsewhere than in the county where assessed, there can be no doubt but the taxes would be illegal, because founded in such case on an illegal assessment, but under the findings of the trial court, which stand uncontested in this matter, and which are based on uncontradicted evidence, there was personal property of the defendant in error in Johnson county subject to assessment and taxation for the year 1885. This being conceded, it follows that the courts can afford no relief. The authorities are uniform on this subject, and if a party evades the assessor, or neglects to list his property for assessment, or fails to seek relief in having an excessive assessment corrected, the courts are powerless to aid him. "When the tax is illegal, one is not obliged to apply for an abatement, unless the statute makes that the sole remedy, but he may contest the tax when attempt is made to collect it. But for a merely excessive or unequal assessment, where no principle of law is violated in making it, and the complaint is of an error of judgment only, the sole remedy is an application for an abatement, either to the assessor or to such statutory board as has been provided for hearing it. The courts of the common law or of equity are powerless to give relief against the erroneous judgments of assessing bodies, except as they may be specially empowered by law to do so. And this principle is applicable to statutory boards of equalization, which are only assessing boards with certain appellate powers, but whose action, if they keep within their jurisdiction, is conclusive, except as otherwise provided by law." Cooley, Tax'n, pp. 748, 749, 750, and cases there cited.

Board of Com'rs v. Searight Cattle Co.

In one case it is said that "it would become an intolerable grievance if every taxpayer might sue the borough or county which taxes him, to recover moneys once regularly paid in pursuance of a regular assessment." Wharton v. Borough of Birmingham, 37 Pa. St. 371. In another it is remarked: "The petition in this case contains no allegation to the effect that the property was illegally assessed or taxed. For an excessive valuation, or a levy of taxes upon property not owned by the party complaining, he has his legal remedy by appeal to the tribunal provided by law to correct such errors. The petition in this case alleges that the plaintiff never delivered to the assessor a list of his taxable property, but does not allege that it was not demanded by that officer, and the allegation that plaintiff did not deliver it is not inconsistent with the facts that the assessor demanded and plaintiff refused or neglected to furnish his list. The law under such circumstances authorizes that officer to ascertain, as est he may, the taxable property owned by the party, and place it upon his book for taxation, and from such as from other assessments the taxpayer has his appeal. Neglecting to avail himself of that remedy, he cannot resort to equity to enjoin the collection of taxes. If this were permitted, the usefulness of the board of equalization and appeals would be destroyed, collectors would be hampered and hindered in the collection of the revenue, and the finances of the municipality thrown into inextricable confusion. This ought not to be tolerated while an appeal to the board of equalization or appeals furnishes an ample remedy for complaints of this character, which may be heard and determined in time for the body which levies the taxes to ascertain upon what property and values they shall be imposed." Meyer v. Rosenblatt, 78 Mo. 495. Says the supreme court of Maryland: "We have no power to make the correction, for the benefit of the public, which the commissioners might have done, and, if courts of equity were to interfere in such cases, parties taxed, instead of going before the proper tribunal to have errors corrected, and thereby, while protecting themselves, secure to the state or county their just demands against the property, would wait until the time has elapsed, and then, by proceeding in equity, escape altogether. Methodist Protestant Church v. Mayor & City Council of Baltimore, 6 Gill, 391." O'Neal

v. Bridge Co., 18 Md. 15. In Iowa, a party paid his taxes on an assessment without making a claim for any deduction, although he was probably entitled to have a deduction made for his indebtedness under the Iowa statute. The court say: "The first time that the fact of plaintiff's indebtedness was brought to the attention of any officer was when he made his application to the board of supervisors to refund the tax. And their refusal to refund the tax constitutes really the very first cause of the plaintiff's complaint. But the board was powerless to act, unless there had been a previous error or irregularity of some kind. The very theory of the plaintiff's application was that there had been a previous error or illegality, and without this it is not pretended that the board had any jurisdiction in the matter. The correct idea, we think, is that there is no right of deduction in any case not brought to the knowledge of the assessor or board of equalization. The statute plainly contemplates that it shall be made before levy, and not afterwards. The plaintiff, then, never acquired the right of deduction. If errors in the amount of assessments could be corrected after the payment of taxes by action to recover the taxes paid, there would be no limit to the litigation that would arise. But in the case at bar there is not even an error in the amount of the assessment. There is simply an omission on the part of the plaintiff to claim a deduction while he had a right to claim it. Nor was there any error in payment, because, before the tax was paid, it had become too late to claim a deduction." Leonard v. Madison Co., 64 Iowa, 418, 20 N. W. Rep. 742. The Maryland statute provides that the county commissioners shall, "when satisfied that any error has arisen by assessing property not liable to be assessed, rectify such error and levy, and pay to the proper person any money that may have been paid in consequence of such error." George's Creek Coal & Iron Co. v. Commissioners of Allegany Co., 59 Md. 255. In Indiana, the law governing cities expressly provided that "the common council may, at any time, order the amount erroneously assessed against and collected from any taxpayer to be refunded to him." It was held that this language, though in form permissive, was in legal effect mandatory, and that payments voluntarily made could be recovered

Board of Com'rs v. Searight Cattle Co.

back. City of Indianapolis v. McAvoy, 86 Ind. 590. In Iowa, the statute is to the effect that in all cases where any person shall pay any tax, interest, or costs, or any portion thereof, that shall afterwards be found to be erroneous or illegal, whether the same be owing to erroneous or improper assessment, to the improper or irregular levying of the tax, to clerical or other errors or irregularities, the board of supervisors shall direct the treasurer to refund the same to the taxpayer. Lanman v. County of Des Moines, 29 Iowa, 312. But it will be seen, however, in the case of Leonard v. Madison Co., supra, that this broad statute, though providing for a refunding of the tax found to be erroneous or illegal, even though owing to erroneous or improper assessments, had no application, and could not be invoked to allow correction of errors in the amount of the assessment after the payment of taxes. Section 3821, Rev. St. Wyo., is relied on to support the action, but it is much narrower than the statutes of Maryland and Iowa in the last two quoted cases referred to severally. It reads as follows: "In all cases where any person shall pay any tax, or any portion thereof, that shall thereafter be found to be erroneous or illegal, whether the same be owing to clerical errors or other errors, the board of county commissioners shall direct the treasurer to refund the same to the taxpayer," etc. This provision does not contemplate the refunding of a tax based upon an illegal assessment of property for taxation, but makes that provision when the tax itself is illegal or erroneous. In the case of City of Indianapolis v. McAvoy, supra, the action was brought to recover taxes imposed on property annexed to a city, the annexation being afterwards declared void, while in the Maryland case, supra, the assessment was upon property not within the jurisdiction of the assessing officer. Even if section 3821 of our Revision could be applied to this case, the ruling in Leonard v. Madison Co., upon reasoning that seems to us to be irresistible, settles the question that after payment of taxes it is too late to complain of an excessive assessment of the property. The multitude of authorities cited are all to the effect that no court can, in the absence of a statute conferring in express terms such jurisdiction upon it, revise the judgment of an assessing officer or that of a statutory board of equalization in the assessment of proper-

ty. They are quite as conclusive that application for a reduction of an excessive or erroneous assessment by the assessor must be made to the statutory tribunal provided for the correction of excessive, erroneous, or unequal assessments before the courts can be appealed to, even where such jurisdiction is lodged in the courts. They are quite as positive in announcing the doctrine that, where relief is sought from illegal taxation or void assessments, the petition or bill must affirmatively and specifically set forth the matters complained of. Bourne v. City of Boston, 2 Gray, 494; Stickney v. Bangor, 30 Me. 404; Hemingway v. Machias, 33 Me. 445; Railroad Co. v. Patterson, (Mont.) 24 Pac. Rep. 704; Howe v. Boston, 7 Cush. 273; Little v. Greenleaf, 7 Mass. 236; Osborn v. Danvers, 6 Pick. 98; Lincoln v. Worcester, 8 Cush. 55; Salmond v. Hanover, 13 Allen, 119; New Orleans v. Canal & Banking Co., 32 La. Ann. 160; Frost v. New Orleans, 28 La. Ann. 417; New Orleans v. Buckner, Id. 414; New Orleans v. Hall, 21 La. Ann. 438; State v. Louisiana Mut. Ins. Co., 19 La. Ann. 474; Deane v. Todd, 22 Mo. 90; Brooks v. Shelton, 47 Miss. 243, 250, 253; Kittle v. Shervin, 11 Neb. 66, 7 N. W. Rep. 861; Wagoner v. Loomis, 37 Ohio St. 571; Stewart v. Maple, 70 Pa. St. 223; Wharton v. Birmingham, 37 Pa. St. 371; Kimber v. Schuylkill Co., 20 Pa. St. 366; Clinton School District's Appeal, 56 Pa. St. 315; Everitt's Appeal, 71 Pa. St. 216; Carlisle School Dist. v. Hepburn, 79 Pa. St. 159.

This suit is in the nature of an action for money had and received, and that is really an equitable action. It is applicable where a person receives money which in equity and good conscience he ought to refund, and the party sued may defend himself by everything which shows that the plaintiff, ex æquo et bono, is not entitled to recover. Supervisors v. Manny, 56 Ill. 160. The gravamen of the petition is that there was no property of the defendant in error subject to assessment or taxation in Johnson county for the year 1885. It has been shown that there was some property there belonging to defendant in error in that year. The trial court found that during that year there were ranch improvements and horses of the defendant in error subject to assessment and taxation in such county, and that the horses were assessed only one half of their actual number. It is possible that the court below should have deducted from the amount of its judgment for

illegal taxes, if the plaintiff was entitled to recover at all, an estimated amount of tax on the 100 head of horses not assessed, by applying the familiar principle that he who seeks equity must do equity. As to the 5,000 head of cattle, whose *situs* was found to be in Carbon, instead of Johnson, county, for the purposes of taxation, although it was also found that they "were accustomed to stray over into Johnson county, and during all seasons of the year were present and ranged in considerable and indefinite numbers in said Johnson county," but were subject to assessment in Carbon, and not in Johnson, county, yet there was the testimony of the assessor for Carbon county, to the effect that a person claiming to be the foreman of the corporation defendant in error, appeared before the board of equalization for Carbon county, and secured an abatement of the assessment for the year 1885 on its property in said county from 13,000 head, as returned by the assessor, to 10,100 head of cattle; and this was granted for the reason given by this foreman that some of the cattle were to be returned for assessment in Johnson county for that year. There was some question as to the right of this person to act for the defendant in error, the Searight Cattle Company, but no one else appears to have acted for it in this matter, and the taxes were paid on the basis of that reduced assessment. Moreover, the evidence shows that these cattle were sold during the same year after the assessment period, and that 14,997 head of cattle were tallied out to the vendee of said corporation. These matters do not address themselves very favorably to the conscience of a court of equity, as it appears that there was an attempt to evade taxation on a portion of the property. In the case of George's Creek Coal & Iron Co. v. Commissioners of Allegany Co., supra, a case cited by counsel for defendant in error, the court said: "As we have already stated, the stock of appellant was not assessed and made liable for taxation in any other part of the state, for county and city purposes, from 1866 to 1879, nor was any tangible property owned by it assessed anywhere in the state. The stockholders of the appellant were equally liable to assessment as the stockholders of any other corporation in other parts of the state; and therefore, under the circumstances of the case, there is no very persuasive equity in favor of the application. It is not the case of a party required

to pay taxes upon property wholly exempt from taxation, as in the case of People v. Supervisors of Otsego Co., 51 N. Y. 401, nor the case of a party by error or mistake paying taxes twice on the same property. It is simply the case of a party paying taxes on its property to the authorities of one locality, by mutual mistake or misapprehension of the law, when that property could and should have been assessed and made liable to taxation in different localities of the state, but from which it escaped by reason of such mutual mistake of the parties concerned. It is quite manifest, therefore, that the appellant has suffered no substantial wrong or injustice in fact, by the mistake by which all the parties acted." There was no mistake in the case at bar. The defendant in error did not list, as required by law, all of its property, and nearly the whole amount of cattle assessed in Johnson county were nowhere else assessed for taxation. It cannot be disguised that there has been a studied attempt to escape taxation presented in the record in this cause. The entire number of cattle were not listed or returned to the assessor for assessment; if any of them were, none of the horses were; no effort appears to have been made to assist the assessor in the discharge of his duties; and no attempt appears to have been made to secure a reduction of an excessive or unequal assessment. No substantial wrong seems to have been done to the defendant in error. Its property, on the whole, whether in the right locality or not, was not assessed much above its value. Having failed to show that it listed its property for taxation in Johnson county in 1885; having failed to show that it applied to the proper board or tribunal for the correction of the assessment, if excessive; and having property within the jurisdiction subject to the taxing power thereof,—the courts can give no relief. For these reasons the judgment of the district court for Albany county should be reversed.

2 But the same question arises in this case as was presented in the case of Powder River Cattle Co. v. Board of Com'rs of Johnson Co., (Wyo.) 29 Pac. Rep. 361,[1] and that is whether or not suit can be maintained against the county in an action to recover back taxes. In deference to the ability of counsel, as displayed in their briefs upon this hearing, and the case

---

[1] Ante, 597.

*Board of Com'rs v. Searight Cattle Co.*

which is under review (Powder River Cattle Co. v. Board Com'rs of Johnson Co., supra) in this court on motion for a rehearing, we have not passed upon the motion, although submitted some time ago, in order that we might consider this case with it. The importance of the question shall be our excuse for again discussing it at some length, but we hope without repetition. Under the common law it seems to be settled that an action would lie against a county in a suit for money had and received for the recovery back of illegal taxes, but for the recovery of county taxes only, and for only such moneys as could be refunded and repaid by the county, and which were collected for its use and benefit. In some states the assessors have been sued; in others, the officers making the illegal levy; but the great weight of authority is in favor of such an action against the county. In the dissenting opinion in the Powder River Cattle Co. Case, supra, the case of Moore v. Board, 2 Wyo. 8, was quoted from to show that the school taxes were for a county purpose, inasmuch as they were admitted to have been paid out and delivered to the several school districts to which they were apportioned before the commencement of the action, and yet the county was held liable for them. The quotation from the agreed statement of facts in that case was not fully given, as it appears therefrom that all of the territorial taxes were paid to the treasurer of the territory before the commencement of the action by the county treasurer. The court in that case (Moore v. Board, supra) did not mention the matter at all in its opinion, or intimate therein whether or not these territorial and general school taxes could be recovered back, yet it rendered judgment that they must be restored, with interest. This case was directly overruled by this court in Torrey v. Baldwin, 26 Pac. Rep. 908,[1] by a unanimous court, upon the only point discussed in the opinion, and hence it is of no value whatever as a precedent, as its decision upon the other question, for which no reason was or can be assigned, in our judgment, is an innovation, and can have no weight. It is impossible to see why a county or any other public corporation can be made to repay or disgorge moneys which it never received, in an action for moneys had and received. The only case

that squints in that direction is that of Lauman v. County of Des Moines, 29 Iowa, 310, where the opinion is founded on a liberal statute in Iowa, and, as to that case, we certainly ought not to hold it in higher esteem than the supreme court of the state, (Iowa,) where it has been modified, explained away, and ignored, until finally it was put to rest in the following language found in the case of Iowa Railroad Land Co. v. Woodbury Co., 64 Iowa, at page 215, 19 N. W. Rep., at page 916: "It is manifest from these considerations, we think, that no judgment could be rendered against the county on account of taxes illegally or erroneously collected for any of the public organizations or corporations for whose benefit the county treasurer collects taxes, without proof that there remains in the treasury funds belonging to such organization or corporation which could properly be applied to the satisfaction of such judgment. It was proven on the trial that the treasurer had paid over to the township clerk and the treasurers of the several independent districts, at the times provided by law, the whole amount of the road and district taxes paid by plaintiff on the lands in question, and there was no evidence that any money remained in the treasury belonging to these funds. We think, therefore, that the district court properly rejected plaintiff's claims for these items. This conclusion is supported by the following cases adjudicated in this court: Butler v. Board, 46 Iowa, 326; Railroad Co. v. Lowry, 51 Iowa, 486, 1 N. W. Rep. 782; Stone v. Woodbury Co., 51 Iowa, 522, 1 N. W. Rep. 745. Some things are said in Lauman v. County of Des Moines, 29 Iowa, 310, which seem inconsistent with this holding, but we think that case is modified in these respects by the subsequent cases cited above." The rule undoubtedly is, in the absence of a statute, or even with a law similar to that of Iowa, as section 3821, Rev. St. Wyo., that the corporation sued must have received the money for its use. Cooley, Tax'n, 805; Vermont Cent. R. Co. v. Burlington, 28 Vt. 193; Spear v. Braintree, 24 Vt. 419; Fairbanks & Co. v. Kittredge, Id. 10; Dawson v. Aurelius Tp., 49 Mich. 479, 13 N. W. Rep. 824; Camp v. Algansee, 50 Mich. 4, 14 N. W. Rep. 672; Dewey v. Supervisors of Niagara Co., 62 N. Y. 294; Slack v. Norwich, 32 Vt. 818; Nelson v. Milford, 7 Pick. 18, 27. It is strange that all of the suits in this jurisdiction that have come under our notice should be based upon the

---

[1] Ante, 430.

idea that the county is responsible for all taxes which its collector collects, including territorial and general school fund, although it would be impossible to "refund" the same out of any county fund. The county as a corporation is entitled to none of the moneys collected for territorial, now state, taxes, or for the general school tax, although collected by one of its officers. There never was any law for this, but heretofore it seems to have passed unquestioned, with the plainest reasons given to the contrary in the books. It is the height of folly to continue such a practice, and the sooner it is upset the better, as it is the acme of absurdity. A public corporation, like a county, has the same rights as a private corporation or an individual, and yet, in an action for money had and received, or to recover back illegal taxes, it is gravely asserted that the territorial courts held that a county can be compelled to restore that which it never had,—to pay back that which it never received. But, so far as this point is concerned, it is settled by the law now governing the procedure, as found in section 3055, Rev. St.: "Actions to recover back taxes and assessments must be brought against the officer who made the collection, or, if he is dead, against his personal representative; and when they were not collected on the tax list, the corporation which made the levy must be joined in the action: provided, that when the money derived from said taxes or assessments has been actually paid over to any municipal corporation for whose use and benefit it was levied or collected, then an action shall be brought against said municipal corporation to recover said taxes or assessments." The taxes sought to be recovered must be "actually" paid over to the municipal corporation for whose use and benefit the money was levied or collected. Even if a county could be considered a municipal corporation, within the meaning of this section, only county taxes actually paid over to it for its use and benefit could be sued for. Neither state taxes, which are collected and levied for the use and benefit of the state, and actually paid over to its treasurer, nor the general school taxes, which are levied and collected for the use and benefit of the several school districts in the county, and actually paid over to them and not to the county, can be recovered from the county, as it, as a corporation created by statute, has never had

these funds or moneys under its control or in its possession, and the same were not levied or collected for its use and benefit or actually paid over to it. It seems incredible that the law should have been so misinterpreted or so misunderstood, even if a county was considered a municipal corporation; yet the trial court gave judgment against the county in its corporate capacity—that is, against its board of county commissioners — for territorial taxes, which at the time of the entry of the judgment, if not at the beginning of the suit, had been paid into the territorial treasury, and for the general school tax levied on all the property of the county, which had likewise been paid over to the several school districts of the county for their use and benefit, or which then belonged to them, although the attention of the court was repeatedly called to this matter during the course of the trial, and was set up as a defense in the answer.

The state of the law, then, at the time of the adoption of our Code of Civil Procedure, was that the county could be sued only for illegal taxes received for its use and benefit, and for such as were actually paid over to it, and this would now be the law, if the construction contended for by the counsel for the defendant in error could prevail. The collector of the taxes, before the adoption of our Code, was protected, except for such illegalities as occurred after he received the tax list and warrant for the collection of taxes, as it was provided that "the list and the warrant thereto attached shall be his authority and justification against any illegality in the proceedings prior to receiving the list." Rev. St. Wyo. § 3808. Omitting the proviso to section 3055 of our Revision, supra, we have substantially the Ohio statute, and, prior to its enactment in 1856, there was no action in that state against the county treasurer as tax collector, unless the law under which the tax was levied was invalid, or he acted without color of law; but, after the enactment of the statute, he has been held liable if the tax is void for any cause whatever. Stephan v. Daniels, 27 Ohio St. 527, 536. Our Code of 1886 changed the liability of the collector as fixed in section 3808, Rev. St., which is a transcription of the law as it existed prior to the passage of the Code, and made him personally responsible for the collection of an illegal tax in all cases, if living, and his personal representative in case of his death. The only

Board of Com'rs v. Searight Cattle Co.

exception is where the money derived from the illegal tax or assessment has been actually paid over to a municipal corporation for whose use and benefit it was levied or collected, and in that case such municipal corporation must be sued. It is urged that this law should be so construed as to hold the collector liable while he had the money, and not liable after he pays it over. But under the terms of the section, if that officer should die while an incumbent of the office, his personal representative, and not his successor in office, must be sued,. and it seems that the possession of the tax moneys does not fix the liability of the collector. It was held in Illinois, when a tax collector had moneys in his hands paid to him under protest in settlement of an illegal tax, and was about to pay them over to different municipal bodies for whom they were collected, that equity would interfere, not because, after the moneys were paid over, the taxpayer would be compelled to resort to each of those municipalities, and thus cause a multiplicity of suits, but for the reason that, having received notice of the claims of the taxpayer, the collector could not, by paying the money over according to the terms of his warrant, escape his liability in an action to recover the same back. It was moneys in his hands to which the corporations for whom it was collected had no right, ·and which equitably belonged to the taxpayer, and not to them, and it was the legal duty of the collector to repay it to the taxpayer; and the payment to the several municipal bodies, after notice to the collector of the illegality of the taxes, and a demand upon him for a return of the tax moneys, would not discharge him from his liability to perform the duty to refund. Kimball v. Bank, 1 Ill. App. 209, 215. Such was the ruling of the supreme court of the United States in Erskine v. Van Arsdale, 15 Wall. 75, in a suit brought against a collector of internal revenue to recover certain taxes paid to him. The court say, in the course of the opinion: "Taxes illegally assessed and paid may always be recovered back, if the collector understands from the payer that the taxes are regarded as illegal, and that suit will be instituted to compel the refunding of them." This seems to be the theory of our law, as it stands since the adoption of our present Code of Civil Procedure. The collector cannot shield himself with his warrant, even while he has the tax money, as it seems he could under section 3808 of the Revision, supra. It is impossible to construe this antecedent law in section 3808 with section 3055 enacted later, so that they may stand together. Their repugnancy is at once manifest. In the former, (section 3808,) the collector's liability is confined to his illegal acts after receiving the list and warrant for the collection of the taxes, and in the latter he is made personally liable if the tax is void for any cause whatever, whether it be levied without authority of law or without jurisdiction. Any liability of the county growing out of the provisions of section 3821, providing for the refunding of an illegal or erroneous tax by the county board, is also gone, as both the collector and the county cannot be sued. Even if this were not so, the county cannot be made liable to "refund" moneys that have not passed into the different county funds, and which have not been paid to the county; and, the collector being liable for all illegal taxes, he would be liable to repay all, whether county, state, or territorial, or the general school tax, and not the county. We do not say that on the application of a taxpayer the board of county commissioners would not be empowered to refund illegal or erroneous county taxes, but if suit is brought the taxpayer must sue the collector and not the county. This leads us to review the conclusions reached by the majority of this court in the case of Powder River Cattle Co. v. Board of Com'rs of Johnson Co., 29 Pac. Rep. 361,[1] that in no case could a county be held liable in a suit to recover back illegal taxes, as the words "municipal corporation," embodied in the proviso to section 3055, did not include counties within the meaning of the section, and that the proviso containing these words would not be so construed as to include counties, as such a construction would not be reasonable, and would be against the manifest intent of the legislature in providing this new and exclusive remedy. We adhere to that ruling, and, in addition to the reasons given in that case, it may be said that the chapter which contains this section is a complete change in the procedure to recover back illegal taxes. Although the body of the section was adopted, in substance, in Ohio in 1856, it did not find its way into our Code, adopted in 1873, which was modeled after the Ohio Code. It was not until

---

[1] Ante, 597.

1886 that this provision was ingrafted upon our law by "An act to establish a Code of Civil Procedure for Wyoming territory," approved March 10, 1886. Sess. Laws, 1886, c. 60. This act became a law some months before the cause of action in this case accrued by the payment of the money to the collector. The law prior to the adoption of this Code authorized a suit against the county in its corporate name, the board of county commissioners, for the recovery of illegal taxes paid to the county, and which could be refunded without suit from such funds as were under the control of the county board, and this remedy was altered by the Code in such manner as to make the collector personally liable, if living, and his personal representative, if dead. The former rule was superseded by this latter and exclusive remedy. All inconsistent legislation was swept away by the repealing clause of the Code, and the rule is unquestioned that, where a statute repeals all former laws within its purview, the intention is obvious, and is readily recognized, to sweep away all existing laws upon the subjects with which the repealing act deals. An affirmative enactment of a new rule implies a negative of whatever is not included, or is different; and if by the language used a thing is limited to be done in a particular form or manner, it includes a negative that it shall not be done otherwise. An intention will not be ascribed to the lawmaking power to establish conflicting and hostile systems upon the same subject, or to leave in force provisions of law by which the later will of the legislature may be thwarted and overthrown. Such a result would render legislation a useless and idle ceremony, and subject the law to the reproach of uncertainty and unintelligibility. Suth. St. Const. §§ 137, 140. If the term "municipal corporation," as used in the proviso to section 3055, is to be so construed in its broad sense as to include counties and school districts, and so as to hold the collector liable for moneys exacted for illegal taxes while in his hands, and not after the same has been paid over to the state or territory, the county, and the school district, the law will be precisely the same as it stood before the adoption of this section, and there would be imputed to the legislature the folly of enacting a provision in the Code giving a new remedy, and leaving the law as it stood before.

The remedy established in the Code (sections 3053–3056, inclusive) is a new one, and greatly simplifies the practice. It provides for enjoining a threatened illegal levy, enjoining the collection of an illegal tax, and for the recovery back of illegal taxes, and it seems that no other averment is necessary in the petition on this point than that the threatened levy is illegal, or that the tax is illegal; thus dispensing with the allegations required in equity in such cases to show irreparable injury, multiplicity of suits, accident, or mistake. If a taxpayer permits a threatened illegal levy to be made, without action on his part, or pays an illegal tax when he has a remedy by injunction to prevent its collection, he may even yet have his remedy against the collector; but if he waives these remedies, except the last, he ought not to complain that he is compelled to sue the collector to recover back the illegal tax, or urge the insolvency of that officer, or the harshness or injustice of the law which makes the collector personally responsible. The law was certainly framed as much for the benefit of the taxpayer as for that of the public. He has but one person to sue, and he is not forced to seek redress from the different corporations or bodies to whom the tax has been paid, and for whose use and benefit it was levied and collected, and thus be harassed by a number of suits. Surely he cannot complain if, after judgment against the collector, that officer is forced to do what formerly the taxpayer might have been compelled to do in seeking relief from the different bodies to which the taxes have been paid. It was intimated in the argument that the collector is remediless in Ohio under the statute of that state, and cannot recoup his losses or reimburse himself for a personal judgment against him for illegal taxes paid to him, but we do not think that the supreme court of Ohio has so decided. In the case of Ratterman v. State, 44 Ohio St. 644, 10 N. E. Rep. 678, "the possibility of being held personally for taxes paid under protest" was referred to, but no case has been found in that state which holds that the collector cannot look to the different bodies to whom he had paid illegal taxes for relief when judgment is rendered against him. The rule is very strict in Ohio as to the payment of taxes voluntarily. It was held there, in a recent case, that, to constitute an involuntary payment, it must appear that the treasurer was about to levy a distress upon the property of the party charged with an as-

Board of Com'rs v. Searight Cattle Co.

sessment which was in the nature of a tax. A simple protest against the validity of the assessment, with notice to the treasurer that the party intends to bring suit to recover it back, was held not sufficient; and that in such a case the general rule applies that, if litigation is intended, it must precede payment, where, as in such cases, the party has a plain remedy provided by statute, and may resort to the same, and thereby avoid a distress of his property. Whitbeck v. Minch, 48 Ohio St. 210, 31 N. E. Rep. 743. The "plain remedy" referred to here is given in section 5848 of the Revised Statutes of Ohio, the same in effect as that given in section 3053 of our Revision, which is that "district courts shall have jurisdiction to enjoin the illegal levy of taxes," etc. In the case at bar payment was made under protest, after seizure of the property, in order to secure its relief, and hence the question decided in Ohio does not arise here; but surely such a payment would be sufficient to put the collector on his guard, and acquaint him fully with the claim and complaint of the taxpayer. That officer is as much accountable for his actions in this respect as was the collector in the cases of Kimball v. Bank and Erskine v. Van Arsdale, supra. In nearly all of the special charters of the cities and towns in this state granted prior to the enactment of any provision restricting such special legislation, such bodies are made bodies corporate and politic, and invested with the attributes of municipal corporations. No such power is lodged in the counties in their corporate capacity. They are merely auxiliaries of the state in the collection of the state and county revenue, in matters of travel and transportation, such as the construction and maintenance of bridges and highways, in the care of the poor, in the administration of justice, and in the preservation of public records. "Municipal corporations proper may be defined to be bodies corporate and politic, created by law for the purpose, primarily, of regulating and administering the local and internal affairs of towns, cities, and villages. Dill. Mun. Corp. § 9. Such corporations are created principally for the benefit and convenience of the inhabitants composing the corporation, although they are important auxiliaries of the state in the administration of the law. The charters conferring powers, prescribing duties, and imposing burdens must in some way receive the assent of those governed by their provisions, and they thus accept the benefits and agree to perform the duties imposed upon them. But a county is not, in a proper sense of the word, a municipal corporation." Woods v. Colfax Co., 10 Neb. 554, 7 N. W. Rep. 269. Counties in that state are made bodies politic and corporate, and "may sue and be sued, plead and be impleaded, defend and be defended against, in any court having jurisdiction of the subject-matter, either in law or equity, or other place where justice shall be administered." Comp. Laws Neb. 1881, p. 177. In the case just cited it was held that a county was not liable for the neglect of the county commissioners in failing to keep a public bridge in a safe condition, in the absence of a statute fixing that liability upon the county, because a county, not being a municipal corporation, was not liable therefor under the common law. It is true that in some of the text books and reports counties have, for the sake of convenience, been termed, in common with other governmental subdivisions of the state, "municipal corporations," but this is in the sense of *quasi* municipal corporations. See And. Law Dict., under the heading of "Municipal Aid," page 46. The line of distinction between corporations of a public character, such as counties, townships, and school districts, and municipal corporations proper, such as cities and towns, is clearly marked. The former class of corporations are subdivisions of the state for governmental and other public purposes, while the latter class is called into existence by the will of the people, within the limits expressed by petition, by vote, or by the representatives of the people in the legislature. Shumway v. Bennett, 29 Mich. 451. Municipal corporations proper have large local police powers, the delegated right of local legislation granted by the legislature, while counties have not. Neither by the usual employment of the words "municipal corporation" in the common speech of men, nor in our legislative usage, nor in the strict and proper legal sense of the term, nor by any fair construction of the proviso in which these words are used, can it be held that they include a county. Considering the change in the law itself, providing a new and exclusive remedy against illegal taxation, and the fact that the taxes of a municipal corporation proper are paid over to the municipality for its sole and exclusive use and benefit, and when so paid over there is no necessity of pursuing the collector to

recover them back if illegally exacted, there can be no doubt that this proviso, taken in connection with the purview of the section containing it, must be so construed as to exclude a county or a school district in the use of the words "municipal corporation," as therein employed. It follows, therefore, that the judgment of the district court for Albany county must be reversed, and the cause remanded to that court, with instructions to proceed therein in conformity with the views herein expressed.

MERRELL, J., concurs.

CONAWAY, J., (*concurring.*) I concur in the result. Defendant in error had personal property subject to taxation in Johnson county. This being settled, the only remaining questions are as to alleged errors in the listing and valuation of such property for taxation. The rectification of such errors must be sought before the county board of equalization. The determination of this board is a judicial act. The taxpayer has notice of its sitting. If he fails to attend, he is in the situation of a party litigant who allows his case to go by default in any court. Section 3821, Rev. St. Wyo., does not authorize retrial of the existence of alleged errors when the question has been once judicially determined. But I cannot concur in the second proposition of the court, to the effect that no action can, in any case, be maintained against a county to recover back illegal taxes exacted by such county. I adhere to my view of this question expressed in my dissent in the Powder River Case, 29 Pac. Rep. 361,[1] cited by the court. I think the county taxes involved in that case were illegal, and should have been recovered in that action. After carefully considering all that has been advanced by court and counsel upon the question, I am confirmed in my opinion that this position is simply impregnable. I will not reargue it. The cases cited by the court, so far as they are relevant, sustain it. The Ohio cases are under a statute materially different from ours. No other cases exempt counties from liability. The Iowa cases relied upon uniformly hold counties liable, not only for illegal county taxes, but for illegal state taxes as well; also for illegal road-district and illegal school-district taxes when there are

funds in the county treasury belonging to such districts. The two Wyoming cases cited hold the counties liable for both illegal county taxes and illegal territorial taxes collected by the county collectors. The Vermont cases hold the counties liable for illegal county taxes, but not for illegal state taxes, and it seems that the states, generally, with the single exception of Ohio, which has a peculiar statute, hold the counties liable for at least the illegal county taxes received by them. In the Powder River Case I eliminated the territorial tax. That left only county taxes to consider. There were no road-district, or school-district taxes involved. The court seemed to consider a county school tax to be, not a county tax, but a school-district tax. No case sustains that view. The principle and practice is time-honored and practically universal, as well as eminently just and equitable, that counties should return taxes unlawfully exacted by them. Our legislature, when it intends to abrogate this practice, will doubtless do so in plain and positive terms. Such a radical and sweeping change should never be effected by a construction, of the correctness of which there can be any doubt. The question between myself and the court is not either of those most discussed by the court,—whether an action can be maintained against a county for an illegal state tax, or an illegal school-district tax, or some tax which the county never received. In the discussion of the last of these irrelevant propositions, the court very properly finds the acme of absurdity. But the question is whether there is any illegal tax for which an action may, in any case, be maintained against a county when it has received the illegal tax. This court holds, and its holding settles the law, that there is not. The county may keep money to which it is not entitled, and the collector or his personal representative must lose the amount, though both be absolutely blameless. Why should the collector suffer the loss, rather than any other county officer? Why should his personal representative suffer the loss, rather than any other person? Why should any person suffer loss merely because the county insists on retaining money to which it is not entitled? It can only be said in reply, such is the statute. I do not think so. I think this conclusion results from a strained and unnatural construction of

[1] Ante, 597.

the statute, and one that leads inevitably to consequences positively absurd. Were it necessary, any construction within the bounds of reason should be resorted to in order to avoid this unjust and oppressive conclusion. But all that is necessary to do is to give the words of the statute their ordinary, well-established meaning. This, I insist, should be done.