Ríos, Plaintiff and Appellant, *v.* Richardson, Treasurer of Porto Rico, Defendant and Appellee.

Appeal from the District Court of Humacao in an Action for the Refund of Taxes.

No. 1384.—Decided July 28, 1916.

Construction of Law—Adoption of Statutes From Other States.—It is a well-settled rule of construction that when statutes originally enacted in other states are adopted, they must be regarded as adopted with the construction given them in the state where enacted.

Taxes—Payment Under Protest—Refund of Taxes.—The act providing for
the payment of taxes under protest and establishing proceedings for the refund
thereof (Laws of 1911, p. 124) did not repeal sections 308, 309 and 310
of the Political Code; consequently a taxpayer who fails to apply for relief
to the Board of Review and Equalization within the proper time cannot pay
the taxes under protest and recover the same later in an action brought
for that purpose.

Id.—Id.—Cause of Action—Complaint—Administrative Appeal.—A complaint
in an action for the refund of taxes paid under protest does not state facts
sufficient to constitute a cause of action when it appears therefrom that the
Board of Review and Equalization had jurisdiction to review the assessment
and it is not shown that an administrative appeal was taken to the said
board.

The facts are stated in the opinion.

*Mr. Francisco González* for the appellant.

*Messrs. Howard L. Kern, Attorney General,* and *Robert
W. Perkins, Jr., Assistant Attorney General,* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Plaintiff, appellant, brought suit to recover taxes "back
assessed" and paid under protest on a parcel of land alleged
to form part of a larger adjoining tract, to have been in-
cluded in previous assessments of the latter, and to have
paid the said taxes together with those accruing on the larger
property under such prior assessments.

A demurrer alleging failure to state a cause of action
in that the complaint did not show an appeal to the Board
of Review and Equalization was sustained by the trial court.

"There are always methods in which one who is wrongfully
assessed for taxation, or unequally taxed, may have abatement of
the assessment or of the tax without resort to the customary legal
remedies. While the assessor still has the list or roll in his hands un-
completed, he may abate any assessment on his own motion, or on
application, when satisfied that it is either wholly or in part illegal
or unjust. No statute could be necessary for this. But when the
assessment has passed from his hands, the right to an abatement
must in general depend upon the statute. * * *.

"The remedy usually given by statute is one for direct review
either by the assessor himself, or in some form of appellate pro-
ceeding.

＊         ＊         ＊         ＊         ＊         ＊         ＊

"And the general rule is that if one fails to appeal to the statutory board of review, he can have no remedy in the courts." 2 Cooley on Taxation, (3d ed.), p. 1378 to 1503.

In *Board of Commissioners* v. *Seabright Cattle Company,* 31 Pac. 268, the Supreme Court of Wyoming, after reviewing a number of cases, draws the following conclusion therefrom:

"The multitude of authorities cited are all to the effect that no court can, in the absence of a statute conferring in express terms such jurisdiction upon it, revise the judgment of an assessing officer or that of a statutory board of equalization in the assessment of property. They are quite as conclusive that application for a reduction of an excessive or erroneous assessment by the assessor must be made to the statutory tribunal provided for the correction of excessive, erroneous, or unequal assessments before the courts can be appealed to, even where such jurisdiction is lodged in the courts."

A North Carolina statute, enacted in 1887, provided that—

"In every case where for any reason a tax paid is claimed to be invalid, the person paying the same may, within thirty days after payment, demand the same in writing from the treasurer of the town levying the tax, and if the tax is not refunded within ninety days thereafter a right of action therefor accrues against the town."

The Supreme Court of that State, in *Richmond & D. R. Co.* v. *Town of Reidsville,* 13 S. E. 865, after holding that a demand within thirty days after payment was a prerequisite to a right of action, and that a complaint which fails to allege such demand is insufficient on demurrer, comments upon this requirement thus:

"* * *. The statutory provision under consideration is founded on justice, convenience, and sound policy. The class of claims to which it refers are against the State and its agencies. The latter are presumed to be honest and just, prepared and willing to allow and discharge all well-founded claims against them. They are not presumed to desire to litigate or withhold justice from any one; nor in their nature, business relations, and transactions, can they know of the nature and merits of the multitudes of claims and demands that may be made against them, in the absence of notice. It is therefore right, just and expedient to require persons having such claims and

demands to present them, and with reasonable promptness, before bringing actions to establish and enforce them. To so require imposes no unreasonable burden upon claimants; and the latter should not be allowed to delay making demand upon the public authorities that claims due them be recognized and paid, or denied and rejected. This is especially so as to claims for taxes improperly or unlawfully exacted. Such claims should be made and settled as soon as practicable.''

In January of the year last above mentioned the Supreme Court of Louisiana, after outlining the history of a Louisiana statute and reviewing the cases in which the same had been construed, closes its opinion in *Shattuck* v. *City of New Orleans*, 1 So. 411, as follows:

''* * *. The right of the taxpayer to appear before the standing committee, and be heard concerning the description of the property listed, and the valuation of the same as assessed, and the report of the standing committee on assessment of the city council, are proceedings preparatory and prerequisite to the taxpayer's right of action to test the correctness of the assessment in the courts of justice. This was certainly a wise precaution taken by the legislature to prevent unnecessary and vexatious embarrassment and delay in the collection of the revenues. We think the revenue laws must be consulted in determination of plaintiff's right and cause of action. They afford the taxpayer ample justice. We cannot assume that the committee on assessment would not or could not have afforded plaintiffs ample and speedy relief, if, indeed, they were entitled to any; and, if they had not, they could then readily have applied to the courts of justice for relief. Conceding all that plaintiffs urge against their assessment, for the purpose of argument, we can see no reason why the committee did not have ample authority under the statute to correct any errors shown to have existed in the description of the property listed, and the valuation of same as assessed, and that is the substance of their demands.''

Again in *Louisiana Brewing Co.* v. *Board of Assessors*, 41 La. Ann. 565, 6 So. 823, the opinion concludes thus:

''If the plaintiff corporation has, by its inaction, permitted the door for relief to be closed upon it, it has no one to blame but itself. The court is powerless to interfere.''

In *Citizens' Savings Bank* v. *The Mayor* (N. Y. 1899, 37 App. Div. 560), the court, referring to an action brought by a Connecticut corporation, said:

"It proceeds upon the theory that the tax, if not void, was—to quote from the plaintiff's brief—'voidable on showing the fact that, at the time of the assessment, the plaintiff had no taxable surplus and, therefore, the bank stock could not be part of its surplus.' A sufficient answer to the conclusion drawn from this proposition is that, whether the premise be correct or not, the plaintiff's stock in banks located here was *prima facie* taxable, and that it was incumbent upon it to secure the proper deduction for its debts, and, failing in that, to review the action of the assessors by certiorari. (*United States Trust Co.* v. *The Mayor,* 144 N. Y. 488.) A stockholder can, if he chooses, waive his right to such deduction. He does so when he fails to ask for it and pays his tax without a murmur. It is idle to say that the plaintiff's stock was absolutely exempt from taxation because its deposits and surplus exceeded the value of its shares, or because the purchase of the stock was necessarily an investment of its deposits. These positions could only be supported by proof furnished to the tax commissioners upon an application for a deduction in whole or in part. The stock was certainly taxable, and the commissioners had jurisdiction to assess the tax. Their jurisdiction under the statute was not affected by the existence of outside facts bearing on the proper measure of deduction, which facts were never called to their attention. The assessments were, therefore, entirely valid."

In the *Matter of Baumgarten* (N. Y. 1899, 39 App. Div. 174), a widow, a pensioner of the United States, obtained an order from the county court commanding the board of supervisors to refund certain taxes upon the ground that the property having been paid for with pension money was exempt. The proceedings were founded on section 16 of Chapter 686 of the Laws of 1892, which provides:

"Sec. 16. *Correction of assessments and returning and refunding of illegal taxes.*—Any such board may correct any manifest clerical or other error in any assessment or returns made by any one or more town officers to such board, or which may or shall have properly come before such board for its action, confirmation or review; and

cause to be refunded to any person the amount collected from him of any tax illegally or improperly assessed or levied, and upon the order of the county court it shall refund any such tax.''

On appeal the court said:

''Her realty having been only partly paid for with pension money, it was her duty, if she claimed an exemption, to appear before the assessors on grievance day and make her claim. Having failed to do this, she is without remedy. This question must be deemed to be settled so far as this court can settle a question. (*Broderick* v. *City of Yonkers,* 22 App. Div. 448; *McKibben* v. *Oneida County,* 25 id. 361; *Tucker* v. *The City of Utica,* 35 id. 173, *Worden* v. *Oneida County,* id. 206.)''

The language in *Tucker* v. *City of Utica* is as follows:

''It is now well settled by authority that where only a portion of the property is paid for with pension money, the assessors have jurisdiction; and that it is the duty of the pensioner who claims exemption to make manifest his position on grievance day. (*Swift* v. *City of Poughkeepsie,* 37 N. Y. 511.) No such objection appears to have been made by the plaintiff in respect to the assessment in question.''

Inasmuch as the law upon which plaintiff relies herein is copied verbatim from an act of the Legislature of Tennessee of 1873, entitled an Act to facilitate the collection of revenues, quoted in *Shelton* v. *Platt,* 139 U. S. 591 at 593, and *Tennessee* v. *Sneed,* 96 U. S. 69 at 71, the interpretation thereof by the Supreme Court of that State is not only much more in point, but gathers additional weight from the well-known rule of statutory construction whereby ''statutes originally enacted in another State, when adopted, are deemed to be taken with the settled construction given them in the State from which they are copied.'' Sutherland on Statutory Construction, sec. 256, p. 337.

If we follow this rule in the case at bar (and, in view of the striking analogy between the existing legislation in Tennessee and in Porto Rico at the respective dates upon which the new law was enacted, we fail to perceive any sub-

stantial reason for a refusal to do so) then all possible doubt is removed by the decision in *Ward* v. *Alsup*, 46 S. W. 573, wherein the Supreme Court of Tennessee said:

"Both of these cases are purely legal actions under the statute, and, though one of them is brought in the chancery court, no equitable questions are involved. In neither of them is there any allegation that the plaintiff or complainant pursued the provision of the statute for correcting unequal and excessive assessments by going before the board of equalization of his county, and making complaints to such board, before paying his taxes, which we consider an indispensable prerequisite to the bringing of any merely legal action to recover back taxes paid under protest, conceding the litigation to be real and bona fide. By Act 1895, ch. 120, sec. 50, the powers and duties of the county board of equalizers are set out and defined, and it is made the duty of that board, among other things, to examine, compare, and equalize assessments, to hear and adjust complaints from any party feeling aggrieved on account of such assessments, and to correct all errors when, in its judgment, justice demands it, etc  Shannon's Code, sec. 802. By the same act, section 62 (Shannon's Code, sec. 807), the State Board of Equalizers were required to proceed to the equalization of the aggregate value of real property of the various counties, and lower or raise assessments as they may deem proper. It will thus be seen that plaintiffs had the remedy of an equalizing board before which their complaints could be, and certainly, in the absence of any equitable reasons in avoidance, should have been made; and this board had ample power to pass upon and rectify their individual grievances. There is nothing in the record to show that any application or complaint was made to the board, or that either of the plaintiffs ever went before the board.

"It has been held that when, by a valid statute, a board of assessors or equalizers is created with power to act, a taxpayer who fails to make application to such board for relief when it has power to act cannot pay under protest, and then recover back the tax in an action for that purpose. It is said to be everywhere a settled rule that application must be made to the statutory tribunal provided for that purpose, if one is provided, before any legal action is taken to recover back the tax.  *  *  *.

"It is true the Tennessee statute gives the taxpayer a remedy by paying under protest if he conceives his taxation to be illegal,

unjust, or excessive, or against any statute or clause of the consti-
tution, and then by suing the collector to recover back the amount
thus unjustly exacted; but this clearly contemplated that the tax-
payer must, in case of irregular, improper or excessive assessments
made by the proper officials, have made complaint before the board
appointed by the statute to hear such complaint, and to inquire into
the assessment and the manner in which it is made, and whether it
is or is not excessive. The county trustee has no power to do this, but
only to collect such taxes as come to him already assessed, except
in certain cases of omitted property, etc.

"If a party contemplates questioning the entire system of assess-
ments or the special assessment of his own property, by the statutory
action to recover the amount demanded from him, he must put himself
in position so to do by lodging his complaint, first, with the board
appointed to hear such complaints under the law, and in the time
provided by statute. The statute which provides that the taxpayer
must pay his taxes under protest, and then sue to recover them
back, and that this remedy should be exclusive, was intended to
prevent the tying up of taxes by injunction and other process, so
that the State's revenue might not be tied up with litigation; but
the theory was that, if the assessment had reached such a stage that
the tax was levied and collectible, the taxpayer then should pay
and take his remedy to recover back. But in order to have this
remedy, in the absence of fraud or other ground of equitable inter-
vention, he must have availed himself of such provisions of the
statute as would have corrected the injustice complained of before
the tax was levied and made collectible. Inasmuch as neither of
the parties complaining in these causes alleges that he has ever gone
before any board of equalization, and sought to have his assessment
rectified because of its alleged illegality or inequality or excessive-
ness, neither occupies such an attitude as to raise the important
questions relating to the assessments presented by them, and sup-
posed to be involved, and upon which the action of the court is
sought; and whether the suits are real or only simulated, whether
bona fide or brought with an ulterior purpose, they cannot be con-
sidered upon the merits of the questions presented; and, without
going further with the investigation of the manner in which and
the purpose for which they were brought, the judgment in one and
the decree in the other must be affirmed, and the cases must be dis-
missed, because of the complainant's failure to resort to the plain,

preliminary remedy provided by the law to have assessments corrected.''

Section 303 of the Political Code provides:

''That whenever the Treasurer of Porto Rico shall learn that any real property liable to taxation has been omitted from the assessment of property of any taxpayer for any fiscal year or years, beginning with the fiscal year nineteen hundred and one and nineteen hundred and two, he shall immediately cause the same to be assessed for the years for which such property has failed of assessment and to add such property to the tax rolls for such years and proceed to the collection of taxes corresponding to the same, and all surcharges accruing on account of such taxes not having been paid promptly, in the same manner as he collects other taxes provided for by this Title: *Provided, however,* That where such property has failed to be assessed and taxed through no wilful default of the owner, the Treasurer of Porto Rico shall have power, in his discretion, to remit the surcharge, in whole or in part. In all cases where property, real or personal, has been assessed for any fiscal year or years, but such assessment has been made in other than the name of the true owner or possessor thereof, or has been so made as to be void, the Treasurer of Porto Rico shall cancel such assessment, eliminate the same from the tax rolls, and withdraw and cancel the tax receipts or bills corresponding to the same; and shall proceed to re-assess such property and correct the tax rolls accordingly, and collect the taxes in so far as may be pending payment corresponding to such re-assessment in the same manner as is herein in this section provided for the assessment and collection of taxes on real property that had improperly failed of assessment.''

Section 308 of the Political Code, ''for the purposes of revising the assessment or reassessment of real and personal property'' and ''for the purpose of passing upon all claims made by taxpayers in respect to the assessment of their properties,'' created ''a permanent Board of Review and Equalization, composed of the Treasurer of Porto Rico, the Secretary and the Commissioner of the Interior, and two other persons, citizens of Porto Rico, versed in matters pertaining to the value of property in Porto Rico.''

Section 309 provides that—

"* * * Any person aggrieved by the action of the assessor in relation to the valuation of his property may make written complaint thereof to the said Board of Review and Equalization, which complaint shall consist of a specific statement of the particular errors complained of, with such facts as may lead to their correction. * * *."

The powers of the board are outlined in section 310, as follows:

"The said Board of Review and Equalization shall hear the appeal and determine anew any questions arising before the board which relate to the liability of the property to assessment, or to the amount thereof, and, upon recording such determination, shall correct the assessment books or schedules in accordance with their decision, or shall order such correction to be made by the Treasurer, if said books or schedules be in his possession. Said board shall have power to abate, lessen or increase the valuations made in any schedule returned to it, whether any complaint has been made in relation thereto or not, and to decide all other complaints in respect to the assessment of taxes and to correct all errors as they may be brought to its attention; * * *."

An Act entitled "An Act providing for the payment of taxes under protest, establishing a procedure for the recovery thereof, and for other purposes," approved March 9, 1911, provides for the recovery of taxes wrongfully or illegally collected when paid under protest. While all other remedies against illegal "collection" of taxes are expressly abolished, nothing is said about assessment, no reference whatsoever is made to the sections of the Political Code above mentioned, and even the customary provision for the repeal of "all laws or parts of laws in conflict herewith" is conspicuous by its absence.

The Political Code, in the sections quoted, deals with the machinery for the assessment of property, and with the procedure for administrative relief from all mistakes or errors of judgment in this regard; and the law of 1911 with the collection of the tax claimed or alleged to be due subject to a possible right of recovery on the part of the taxpayer in

an action brought for that purpose. By the terms of section 330 of the Political Code the taxes imposed by section 285 thereof are made payable semiannually in advance upon the first day of July and January, following the completion of the tax rolls in the manner prescribed by section 314, which provides, among other things, that the "bound schedules, or tax rolls, shall constitute the assessment book of the district to which it relates, in accordance with which the tax provided by law shall be levied and collected; and shall be conclusively presumed by all courts and tribunals to be valid and shall not be set aside or changed except by way of the correction of manifest error   *   *   *."

We cannot believe that our legislature by its adoption of the Tennessee statute in 1911 intended to repudiate the theory of the original enactment as announced by the Tennessee court with reference to the effect intended upon prior legislation in Tennessee quite similar to our own, and thus practically to eliminate the Board of Review and Equalization as a factor in the assessment of property, either by substitution of the suit to recover taxes paid under protest for the administrative appeal to such board in matters clearly within its jurisdiction, or by the establishment of a merely alternative remedy, the one or the other procedure to be adopted indiscriminately at the caprice of the taxpayer.

The law clearly and most emphatically negatives the idea of any alternative remedy as to matters within its purview and contains little or nothing upon which to hang any plausible theory of an implied repeal of any part or portion of the Political Code pertinent to the question involved herein. To require the taxpayer first to exhaust his administrative remedy can work neither hardship nor injustice to him and involves no impairment or abridgment of his right under the more recent enactment. If in a proper case and without reason or excuse he scorns his opportunity for administrative relief, then the subsequent collection of the tax is neither illegal nor wrongful nor unjust.

The complaint raises a single question of fact easily ascertainable by the assessor in person and peculiarly susceptible of determination on appeal by the Board of Review and Equalization, and utterly fails either to excuse the failure to prosecute such appeal or to justify a resort to the courts in the absence of a final adverse administrative determination of such question first had and obtained.

Obviously under certain conceivable circumstances not found in the case at bar, an action might be brought without necessity of a previous administrative appeal. Such cases will be disposed of as they arise. The simple question of whether or not the taxes on a certain parcel of land, conceded to be subject to the power of assessment, have been included in the assessment of a larger adjoining property, and have been previously paid together with and as part of the taxes on such larger tract, is plainly no exception to the general rule.

The judgment must be

*Affirmed.*

Justices del Toro and Aldrey concurred.

Mr. Chief Justice Hernández took no part in the decision of this case.

Mr. Justice Wolf dissented.

----

DISSENTING OPINION OF MR. JUSTICE WOLF.

It seems to me that the Act of March 9, 1911, is very plain on its face when it gives a taxpayer a right to sue the Treasurer if a tax has been wrongfully collected. It gives the taxpayer the right, and there is no provision anywhere in the Act requiring him to appeal to the Board of Equalization and Review. Before the said Act of March 9, 1911, such an appeal was in a vast number of cases the only direct remedy a taxpayer had. But the act now in several parts gives the said taxpayer a remedy by suit *in all cases* of

wrongful taxation if he will first pay his taxes under protest. The payment of the taxes under protest is the essential condition precedent. After the payment of the tax under protest in case of wrongful taxation a remedy by suit arises in the taxpayer under the clear wording of the law. I see no room for adding another condition precedent.

But it is said that our statute was taken from Tennessee and that we should follow the construction given to it by the highest court of that State and *Ward* v. *Alsup,* 46 S. W. 573, is cited. As for the statute itself, there is no construction of it in that case. It is there said that under the system of taxation in Tennessee a taxpayer must first exhaust his administrative remedy. The decision is a construction of the whole system of taxation in Tennessee and not of the statute itself. Suppose, for example, there had been no administrative board of review in Porto Rico and we had still adopted the Tennessee statute. There would have been no ambiguous words therein and hence no room for construction. The rule of construction to which the majority opinion relates is one, I take it, that refers to the interpretation of the words of the statute itself. However that may be, the rule of construction is not to be followed blindly in all circumstances. *Coulam* v. *Doull,* 133 U. S. 216; *Whitney* v. *Fox,* 166 U. S. 646, 647. In the latter case the Supreme Court of the United States refused to be bound by the interpretation put upon a statute by California after the said statute was adopted by Utah when there was a single case in California and where the Utah decision was in harmony with the obvious meaning of the statute. The situation in this case seems to be identical. I think that the intention of the legislature from the words of the statute was to govern all cases of wrongful taxation. I regret that various circumstances have interfered with my presenting a more elaborate opinion, but as I dissented from the majority I desired briefly to indicate my reasons.